**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Robert Joseph GEIGER, Defendant and Appellant.**

**Crim. Nos. 880094, 880120 and 880121.**

Supreme Court of North Dakota.

Oct. 18, 1988.

James W. Wold, State's Atty., Griggs County, Cooperstown, for plaintiff and appellee.

David C. Thompson, of Craft, Thompson & Boechler, P.C., Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Robert Geiger appeals from three judgments of conviction of driving under suspension. Finding no error, we affirm.

On May 15, 1987, Mark Bethke of the North Dakota Highway Patrol observed a motorcycle traveling on Highway 200 near

Cooperstown, North Dakota. After the operator of the motorcycle stopped his vehicle at an approach, Bethke drove his patrol car closer to where the operator stopped. Bethke then observed the operator through his binoculars and recognized that it was Robert Geiger. Having earlier noted that Geiger's name was on the list of people whose licenses were suspended,[1] Bethke requested that Geiger approach the patrol car. While Geiger was seated in the patrol car, Bethke confirmed through State radio that Geiger's license still was suspended. Bethke then issued Geiger a citation for driving under suspension.

On July 1, 1987, Barry Weigel, Chief of Police for the City of Cooperstown, observed Geiger operating a farm tractor in the city of Cooperstown. Knowing that the operator was Geiger and knowing Geiger was listed on the suspension list, Weigel stopped Geiger. Upon confirming through State radio that Geiger's license still was suspended, Officer Weigel issued Geiger a citation for driving under suspension.

■ On appeal, Geiger argues that the stops on May 15, 1987, and July 1, 1987, violated his Fourth Amendment right to be free from unreasonable seizures.[2] The stops were unreasonable, he argues, because the officers had at their disposal readily available and far less intrusive means of verifying their suspicions. More specifically, he argues, the officers should have confirmed his license status before they stopped him.

Relying primarily upon *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and *State v. Guzy*, 139 Wis.2d 663, 407 N.W.2d 548 (1987), Geiger argues that the brief investigation conducted by the officers would have been less intrusive if the officers had contacted State radio prior to stopping Geiger. This argument wholly misinterprets the holding of *Royer*.

In *Royer*, two detectives stationed at an airport stopped the defendant on the way to his plane because they believed that the defendant's appearance, mannerisms, luggage, and actions fit the profile of a drug courier. 460 U.S. at 493, 103 S.Ct. at 1321. In analyzing whether this was an illegal seizure the Court stated:

"The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." 460 U.S. at 500, 103 S.Ct. at 1325–1326. [Citations omitted.]

Thus it is apparent that the Court, in discussing "least intrusive means," was assuming that the stop was justified, and therefore whether or not the police could have further verified their suspicions was irrelevant since they already had a reasonable and articulable suspicion that Royer was committing a crime. That is, the "least intrusive means" analysis pertains only to actions by police officers *after* the stop.[3]

1. North Dakota law-enforcement personnel receive a list of people in their area whose licenses have been suspended or revoked. The list is issued weekly by the North Dakota Drivers License Division.

2. Although Geiger appealed three convictions of driving under suspension, he raised no issues pertaining to the June 4, 1987, offense and we therefore necessarily affirm that conviction.

3. Whether the least-intrusive-means argument pertains even to actions by police after the stop is questionable in light of the following statement from *United States v. Sharpe*, 470 U.S. 675, 686–687, 105 S.Ct. 1568, 1575–1576, 84 L.Ed.2d 605, 615–616 (1985):

"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.... A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should

Geiger relies on *State v. Guzy*, 139 Wis.2d 663, 407 N.W.2d 548 (1987), for the proposition that police officers act reasonably only if they have exhausted all alternative means of further investigation before stopping the suspect.[4] To require a police officer to exhaust all other avenues of investigation before he is permitted to stop a suspect would place too great a burden on law-enforcement officers. We find that the stops in this case were reasonable notwithstanding the fact the officers could have further verified Geiger's license status prior to the stop. Having concluded that the officers did not act unreasonably in failing to contact State radio prior to stopping Geiger, we nevertheless must determine whether the stops were based upon an articulable and reasonable belief that a crime was being committed, i.e., whether or not the stops were justified.

■ As we stated in *State v. Lykken*, 406 N.W.2d 664, 666 (N.D.1987), "An officer must have an articulable and reasonable suspicion that a motorist is violating the law in order to make a legal investigative stop of a vehicle.... We employ an objective standard in the determination of the validity of a stop, taking into account inferences and deductions that an investigating officer would make that may elude laypersons." [Citations omitted.]

The United States Supreme Court has held that a flyer indicating the desire of a police department to question an individual may justify a brief detention. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). In *Hensley*, the defendant was stopped by officers who had seen a flyer requesting that the defendant be held for questioning. In upholding the stop, the Court stated, "[W]e think the flyer would further justify a brief detention at the scene of the stop while officers checked whether a warrant had in fact been issued." 469 U.S. at 234, 105 S.Ct. at 683.

■ In the present case, each officer had the benefit of having a current list of peo-

---

not indulge in unrealistic second-guessing. A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, by itself, render the search unreasonable.' ... The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." [Citations omitted.]

Thus the mere fact that a less-intrusive means was available is not necessarily determinative. See also 3 LaFave, *Search and Seizure* § 3.2 at 392 (1987) ["This 'least intrusive means' principle is nowhere quoted by the *Sharpe* majority, which perhaps casts some doubt upon its continued vitality"].

4. If we were to follow *Guzy*, which we do not, that case is distinguishable from the present one. In *Guzy*, a man described as a white male with dark shoulder-length hair and a beard, a slim build, wearing sunglasses and a blue vest with red stripes, robbed a grocery store. Police officers observed a pickup that could be in the area they were patrolling if it had left the grocery store at about the time of the robbery. The occupants both had shoulder-length hair. On the basis of those facts, the officers stopped the vehicle. In analyzing whether the stop was based upon a reasonable and articulable suspicion, the Wisconsin Supreme Court stated:

"Inasmuch as the focus is on reasonableness, the presence or absence of [the following] circumstances can bear on the weight that can reasonably be given to the known fact or facts. Are alternative means of further investigation available, such as a license plate check, closer observation of the suspects, or obtaining additional information? If so, the reasonableness of the stop based on *scant facts* may well be questionable.... What actions would be necessary following the stop for law enforcement officers to determine whether to arrest or release the suspected individual?" [Bracketed insertion and emphasis added.] 139 Wis.2d at 678, 407 N.W.2d at 555.

Applying this analysis, the court concluded that the officers "acted reasonably in freezing the situation by means of the vehicle stop in order to further investigate." 139 Wis.2d at 682, 407 N.W.2d at 557. The only information the officers in *Guzy* had linking the suspect with the crime was that he had shoulder-length hair and was in the area in which the robber could have been. Here, both officers had a computer printout indicating that Geiger's license was suspended. The lists were no more than a week old. This fact is not so scant as to make the stop unreasonable. On the contrary, as discussed *infra*, Geiger's name on the printout of suspended drivers gave rise to an articulable and reasonable suspicion that Geiger may have been driving with a suspended license.

ple living in the area whose licenses were suspended. The list indicating that Geiger's license was suspended provided each officer with an articulable and reasonable suspicion that Geiger was driving while his license was suspended. Therefore, Geiger's Fourth Amendment rights were not violated when he was stopped only long enough for the officers to confirm his license status.

The judgments of conviction are affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.