**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Roberta Lynn SARHEGYI, Defendant and Appellee.**

Cr. No. 920031.

Supreme Court of North Dakota.

Nov. 5, 1992.

Constance Louise Cleveland, Asst. State's Atty., Fargo, for plaintiff and appellant; submitted on briefs.

Mark Anthony Beauchene, Fargo, for defendant and appellee; submitted on briefs.

VANDE WALLE, Justice.

The State of North Dakota appealed from a county court order which granted Roberta Lynn Sarhegyi's motion to suppress evidence in an action by the State against Sarhegyi for driving while under the influence of alcohol and operating a motor vehicle while her North Dakota driver's license was under suspension. We affirm.

At about 1:30 a.m. on August 6, 1991, Deputy Mitch Burris of the Cass County Sheriff's Department was patrolling the 32nd Avenue South area of Fargo. While passing a farm implement dealership, he happened to notice a darkened lone green Chevrolet parked amongst the tractors and combines. He remembered that he did not see the Chevrolet there when he previously passed the dealership, so, being suspicious of a passenger car in a farm implement lot in the middle of the night, he entered the dealership parking lot to investigate. When he drove into the lot in his marked sheriff's department patrol car, the Chevrolet's headlights came on and it attempted to leave the property. Deputy Burris stopped the Chevrolet from leaving.

Deputy Burris left his car and walked up to the Chevrolet. He came upon Sarhegyi sitting in the driver's seat, and he asked her for some identification. Sarhegyi said that she had no identification, but gave Deputy Burris her name and date of birth. Deputy Burris asked Sarhegyi why she was in the parking lot at that hour, to which she replied that she needed directions to North Fargo. During their discourse, Deputy Burris noticed that Sarhegyi had bloodshot eyes, a flushed face, and slurred speech.

Deputy Burris asked Sarhegyi to get out of her Chevrolet, which she did, and he again asked Sarhegyi for identification. Sarhegyi again said that she had none, and added that she was drunk and that her North Dakota driver's license was under suspension. Deputy Burris then asked Sarhegyi to perform a number of field sobriety tests. She did not pass these tests to Deputy Burris's satisfaction. Deputy Burris placed Sarhegyi's name and birth date through the state's computer in his patrol car, and information came back notifying him of her driver's license suspension. Deputy Burris took Sarhegyi to the Cass County Jail after he arrested her for driving under the influence and operating a vehicle under suspension.

Sarhegyi filed a motion to suppress evidence alleging that Deputy Burris's stop of her was illegal because it was made without articulable facts based upon a reasonable suspicion that a crime had been committed. After a hearing in Cass County Court, the court issued a memorandum opinion followed by an order suppressing all evidence and the State appealed.

An appeal by the State of an order granting the suppression of evidence is allowed via section 29–28–07(5), NDCC. The appellate court's standard of review in considering a trial court's disposition of a motion to suppress is well documented in North Dakota case law:

" 'The trial court's disposition on a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's determination.' *State v. Huether*, 453 N.W.2d 778, 780 (N.D.1990) (citing *State v. Lorenzen*, 401 N.W.2d 508, 508 (N.D.1987)). This standard of review recognizes the trial court's opportunity to weigh the credibility of the witnesses and the testimony presented. *State v. Ronngren*, 361 N.W.2d 224, 230 (N.D.1985) (citing *State v. Frank*, 350 N.W.2d 596, 599 (N.D.1984))."

*State v. Bryl*, 477 N.W.2d 814, 816 (N.D. 1991).

In this case, the observation and action of Deputy Burris were offered into evidence stemming from his stop of Sarhegyi. Deputy Burris admitted that he stopped Sarhegyi and this fact is not in contention. A traffic stop significantly curtails the "freedom of action" of the driver and the passengers, if any, of the detained vehicle. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3149–50, 82 L.Ed.2d 317, 333 (1984). A "stop" is a

temporary restraint of a person's freedom resulting in a seizure within the meaning of the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Indvik*, 382 N.W.2d 623 (N.D.1986). There is no choice but for a driver to stop—for to chose to ignore a law enforcement official's request to stop is a crime under section 12.1–08–02, NDCC. The "stop" in this case is analogous to a *"Terry* stop" and must be analyzed under its test. *See Terry, supra. Indvik, supra.*

■ *Terry* requires a dual inquiry into the reasonableness of an investigatory stop. The reviewing court must (1) determine whether the facts warranted the intrusion of the individual's Fourth Amendment rights, and if so, (2) determine whether the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place. *United States v. Stevie*, 578 F.2d 204 (8th Cir.1977); *Wibben v. North Dakota Highway Comm'r*, 413 N.W.2d 329 (N.D.1987).

■ In determining whether an officer's intrusion into one's Fourth Amendment rights is warranted, courts have set a standard an investigating officer must follow in light of the policy of the Fourth Amendment which is "to minimize governmental confrontations with the individual." *Wibben, supra* at 334 [Levine, J., concurring] [citing *United States v. Dunbar*, 470 F.Supp. 704 (D.Conn.1979)]. Specifically, an investigating officer "must have an articulable and reasonable suspicion" that a law has been or is being violated. *Bryl, supra* at 816; *Wibben, supra* at 331. The concept of such a reasonable suspicion is not "readily or even usefully, reduced to a neat set of legal rules." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989). It is a standard less than that required for probable cause, *United States v. Montoya de Hernandez*, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), but more than that of a mere hunch. *See State v. Smith*, 452 N.W.2d 86, 88 (N.D.1990) [the officer's motivations must be based on more than "a vague 'hunch' or other non-objective facts"]; *State v. Varvel*, 436 N.W.2d 649,

651 (Iowa App.1988) ["suspicion or curiosity will not suffice" as a valid stop justification]. Nonetheless, the standard is an objective one in that the trier of fact asks "whether or not a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in criminal activity." *Indvik, supra* at 627 [citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621, 628 (1981)].

■ The problem in this case is the officer's lack of reasonable suspicion that criminal activity was or was about to be afoot or that a "community caretaking function" required the stop. *Wibben, supra.* Officer Burris testified that Sarhegyi had not violated any traffic law prior to the stop, that there were no indicia of an emergency of any kind, and that there were no reports of criminal activity in the area. The only bases for his suspicions were the time of night, the burglary possibilities, the safety of the occupant, if the car was stolen, if someone needed assistance, and the fact that Sarhegyi began to pull away from him as he entered the lot. All these justifications are either conflicting with Deputy Burris's further testimony or are legally insufficient bases for reasonable suspicion when examined in light of existing case law.

■ The fact that Sarhegyi moved her car when Deputy Burris approached is not sufficient to justify a stop. In *State v. Sanger*, 420 N.W.2d 241 (Minn.App.1988), a defendant appealed a trial court conviction of DWI claiming that evidence from an illegal stop should have been suppressed. An officer observed a parked car in a residential area at night. The car's windows were rolled up and fogged over, and people were sitting and moving in the front and back seats. The officer pulled up beside and behind the car, at which time the observed car began backing up. The officer then stopped the car, approached it, identified the occupants, and observed signs of intoxication. The officer arrested the driver. The Minnesota Appellate Court held that the officer had no reasonable or articu-

lable suspicion to stop the car and reversed the lower court's denial of the defendant's motion to suppress since nothing was articulated as dangerous or suspicious about the car. Unless combined with other objectively valid indicia of suspicion, courts have held that mere avoidance of a police car is insufficient unless erratic, fast, and extreme. *State v. Anderson*, 155 Wis.2d 77, 454 N.W.2d 763 (1990); *People v. Lambert*, 174 Mich.App. 610, 436 N.W.2d 699 (1989); *State v. Johnson*, 444 N.W.2d 824 (Minn. 1989). Sarhegyi's actions were not of this caliber.

In *People v. Freeman*, 413 Mich. 492, 320 N.W.2d 878 (1982), a case involving comparable facts, two officers observed a parked car with the lights on and motor running in a parking lot at 12:30 in the morning. The officers approached the car and asked the defendant to leave the vehicle and produce identification. In the process, the officers observed an open beer bottle and a handgun in the car, and arrested the defendant driver. The Michigan Supreme Court held the stop illegal as "(1) an idling, occupied vehicle with its parking lights on, parked in an otherwise darkened, deserted parking lot, (2) near a darkened house, (3) at 12:30 a.m." did not provide a sufficient basis for the officer's suspicion that criminal activity might be afoot. *Freeman, supra*, 320 N.W.2d at 880. The court stated:

"A lone automobile idling in a darkened parking lot late at night does not, without more, support a reasonable suspicion of criminal activity. People may temporarily stop their automobiles in such locations for a variety of reasons: to rest, to check directions, to rendezvous with others, to converse, etc. It is not an offense for an individual to be upon the private property of another unless he has entered 'after having been forbidden so to do by the owner or occupant' or refused to depart after having been told to do so. Of course, the presence of an automobile in these circumstances may, in combination with other specific, objective facts— *e.g.*, a report linking a vehicle of the same description to recent criminal activity—support a reasonable suspicion warranting brief seizure of the vehicle's occupant for limited on-the-scene inquiry. However, the record in this case is devoid of any reference to other specific facts which would cast a suspicious light upon the presence of Freeman's vehicle in the parking lot."

*Freeman, supra* at 880–81 [footnotes omitted]. *See also City of Minot v. Nelson*, 462 N.W.2d 460 (N.D.1990) [information of "suspicious" vehicle parked in front of trailer did not justify investigatory stop when vehicle was no longer parked but was being driven away after police arrived; nothing to justify suspicion of criminal activity].

■ We employ an objective standard in determining the validity of a stop, taking into account the inferences and deductions that an investigating officer would make that may elude laypersons. *State v. Geiger*, 430 N.W.2d 346 (N.D.1988); *Indvik, supra*. Nevertheless, there is nothing but Deputy Burris's bare suspicion to warrant the stop. The State does not direct our attention to any comparable case in which a suppression motion was denied. Indeed, cases from this and other jurisdictions, in which a stop of a seemingly innocent looking car has been upheld, all involve something more than the bare circumstances of Sarhegyi's case. *See State v. Hornaday*, 477 N.W.2d 245 (N.D.1991) [officer informed that three people in vehicle parked in a shopping center parking lot were drunk and officer observed occupants drinking a beverage]; *State v. Rodriguez*, 454 N.W.2d 726 (N.D.1990) [arrest warrant as to the person affiliated with the vehicle]; *State v. Smith*, 452 N.W.2d 86 (N.D.1990) [beer bottles around car, suspicion of openbottle law violation]; *Geiger v. Backes*, 444 N.W.2d 692 (N.D.1989) [high crime area, known license suspension]; *State v. Thordarson*, 440 N.W.2d 510 (N.D.1989) [unidentified call and observed speeding]; *Wibben v. North Dakota Highway Comm'r*, 413 N.W.2d 329 (N.D.1987) [officer verifies details of anonymous tip]; *State v. Placek*, 386 N.W.2d 36 (N.D.1986) [rear lights not operating]; *State v. Schwartz*, 239 Neb. 84, 474 N.W.2d 461

(1991) [vehicle matched description of that involved in previous criminal activity]; *People v. Murray*, 137 Ill.2d 382, 148 Ill.Dec. 7, 560 N.E.2d 309 (1990) [community caretaking function in approaching car on roadside with sleeping occupant inside]; *State v. Rein*, 234 Neb. 917, 453 N.W.2d 114 (1990) [recent vandalism where the car was parked]; *State v. Johnson*, 444 N.W.2d 824 (Minn.1989) [sudden and extreme evasive conduct after seeing police]; *State v. Clayton*, 113 Idaho 817, 748 P.2d 401 (1988) [driver slumped over wheel, ignition on]; *State v. Kuskowski*, 200 Conn. 82, 510 A.2d 172 (1986) [driver unconscious and propane tank lit inside car]; *State v. Boswell*, 170 W.Va. 433, 294 S.E.2d 287 (App.1982) [nearby bar's history of problems with disorderly conduct, conduct of vehicle's occupants]; *People v. Ledwa*, 81 Ill.App.3d 276, 36 Ill. Dec. 617, 401 N.E.2d 298 (1980) [driver asleep]; *State v. Montoya*, 94 N.M. 542, 612 P.2d 1353 (App.1980) [officer investigating burglary scene notices stolen items in plain view]; *Guardiola v. State*, 268 Ind. 404, 375 N.E.2d 1105 (1978) [car against fence pole, driver lying in front seat].[1]

Conflicts in the testimony are resolved in favor of affirmance, and there is sufficient competent evidence to fairly support the trial court's determination in granting Sarhegyi's motion. Because we agree with the County Court that these facts do not warrant an intrusion into Sarhegyi's Fourth Amendment rights, there is no need to continue to the second *Terry* prong.

The order granting the motion to suppress is affirmed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and JOHNSON, JJ., concur.

---

**1.** *Buck v. North Dakota State Highway Comm'r*, 425 N.W.2d 370 (N.D.1988) [sustaining an arrest] may appear inconsistent with our decision, but that case and others of a similar nature are distinguishable on the basis that the car was stopped, the officer was engaging in a community caretaking function in approaching the car and, significantly, the validity of the initial investigation was not challenged on appeal.