STATE of North Dakota, Plaintiff and Appellee,

v.

Diane HALFMANN, Defendant and Appellant.

Cr. No. 930400.

Supreme Court of North Dakota.

June 28, 1994.

Cameron D. Sillers, State's Atty. (argued), Langdon, for plaintiff and appellee.

Thomas L. Trenbeath (argued), Fleming, DuBois & Trenbeath, Cavalier, for defendant and appellant.

NEUMANN, Justice.

Diane Halfmann appeals from a district court judgment of conviction and the denial of her motion to suppress evidence of driving while under the influence of alcohol. Holding there was no Fourth Amendment "stop," we affirm the order and judgment of the district court.

Officer Dana King of the North Dakota Highway Patrol observed Diane Halfmann driving her vehicle on a county road at approximately 1:00 a.m. Officer King testified that although he saw the vehicle weaving on the gravel road, he did not elect to stop her because some degree of weaving is common when driving on gravel. While Officer King was still driving behind Halfmann, she pulled off to the shoulder of the road and stopped. Officer King also stopped, and after a few seconds pulled his car off to the shoulder behind Halfmann. He activated his amber lights as he exited his vehicle and approached Halfmann. Upon reaching the car, Officer King spoke to Halfmann through the open driver's side window. The resulting conversation ended in the arrest of Halfmann on the charge of driving under the influence of alcohol.

Prior to trial, Halfmann moved the court to suppress evidence of the arrest, and to dismiss the charges. The trial court denied the motion, and Halfmann entered a conditional plea of guilty under Rule 11(a)(2) of the North Dakota Rules of Criminal Procedure. This timely appeal followed.

The issue Halfmann raises on appeal is "whether a law enforcement officer, acting in a dual capacity of public caretaker and criminal investigator, may investigate the driver of a parked vehicle without reasonable suspicion of unlawful activity." Halfmann contends Officer King stopped her without a reasonable and articulable suspicion that a law had been or would be violated. We agree with the trial court's finding that a Fourth Amendment "stop" did not occur, thereby negating the "reasonable and articulable suspicion" requirement.

When reviewing a trial court's disposition of a motion to suppress, the "disposition will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's determination." *City of Grafton v. Swanson,* 497 N.W.2d 421, 422 (N.D.1993). We defer to the trial court's superior opportunity to weigh the evidence and to judge the credibility of the witness. *E.g., State v. Guthmiller,* 499 N.W.2d 590, 592 (N.D.1993).

Courts have recognized three tiers of law enforcement-citizen encounters: (1) arrests, which must be supported by probable cause; (2) *"Terry "* stops, seizures which must be supported by a reasonable and articulable suspicion of criminal activity; and (3) community caretaking encounters, which do not constitute Fourth Amendment seizures. *United States v. Hernandez,* 854 F.2d 295 (8th Cir.1988); *Thompson v. State,* 303 Ark. 407, 797 S.W.2d 450 (1990); *People v. Murray,* 137 Ill.2d 382, 148 Ill.Dec. 7, 560 N.E.2d 309 (1990). Halfmann argues a Fourth Amendment "stop" occurred when Officer King pulled up behind her car, activated his amber lights, and approached her car by foot. Under these circumstances, we disagree. The initial encounter between Halfmann and Officer King was not of the second tier *Terry* stop variety, but was instead of the third tier community caretaker variety.

"A 'stop' is a temporary restraint of a person's freedom resulting in a seizure within the meaning of the Fourth Amendment." *State v. Sarhegyi,* 492 N.W.2d 284, 285–86 (N.D.1992). "[A]n investigative stop of a moving vehicle 'must be justified by some

objective manifestation that the person stopped is, or is about to be, engaged in criminal activity,'" *Guthmiller*, 499 N.W.2d at 592 (citing to *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981)), thus protecting people's Fourth Amendment constitutional right to be free of unreasonable searches and seizures, *see Wibben v. North Dakota State Hwy Comm'r*, 413 N.W.2d 329, 331 (N.D.1987) (investigative stop is seizure within meaning of Fourth Amendment).

"Not every police contact with a citizen is a seizure." *State v. Langseth*, 492 N.W.2d 298, 300 (1992). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). Officer King did not initially exercise his authority to restrain Halfmann's liberty.[1] To the contrary, she pulled to the side of the road of her own volition. It was only after she stopped that Officer King turned on his amber lights. The use of amber lights here was a procedural precaution used by Officer King to maintain traffic flow, and was not meant to inhibit Halfmann's liberty. *Cf. Langseth*, 492 N.W.2d at 301 (pursuit with flashing lights converted encounter into a stop). Halfmann has not argued that she felt her liberty was restrained in any way.

Law enforcement officers frequently act in the role of community caretaker, actions separate from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *Id.* at 298. "For example, a policeman's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response." *Id.* at 300.[2]

Officer King was acting in this caretaker capacity at the time he questioned Halfmann. There is no evidence to suggest Officer King ordered Halfmann to do anything, or demanded any response. "[T]he mere approaching and questioning of a person seated in a parked vehicle does not constitute a seizure." *Murray*, 148 Ill.Dec. at 11, 560 N.E.2d at 313; *see also Crawford v. Comm'r of Pub. Safety*, 441 N.W.2d 837, 839 (Minn. Ct.App.1989) ("The law makes a distinction between the approach of an already stopped vehicle and the stop of a moving vehicle. It is not a seizure for an officer to simply walk up and talk to a person standing in a public place or to a driver seated in an already stopped car.") Additionally, we distinguish the facts of this case from those in which there was a "tip" that the driver of the vehicle might be breaking the law. *See Guthmiller*, 499 N.W.2d at 590 (anonymous caller reported "DUI driver"); *Wibben*, 413 N.W.2d at 329 (anonymous caller reported "sick or intoxicated" driver).

■ "A caretaking encounter does not foreclose an officer from making observations that lead to a reasonable suspicion." *Langseth*, 492 N.W.2d at 300; *see also Thompson*, 797 S.W.2d at 452 (seizure of citizen in stopped car occurred only after officer addressed citizen and noticed odor of alcohol). However, law enforcement officers may not escalate consensual encounters into seizures unless valid reasons arise for doing so. *Langseth*, 492 N.W.2d at 300. Halfmann does not argue that such valid reasons did

---

1. In *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), *reh'g denied*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 the Supreme Court listed four examples of circumstances which might be indicative of a seizure even when the person did not attempt to leave: (1) threatening presence of several law enforcement officers, (2) display of a weapon by law enforcement officer, (3) physical touching of citizen, and (4) use of language or tone of voice indicating compliance with the law enforcement officer's request might be compelled.

2. As noted by the Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973):

   "Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office."

not exist once Officer King approached her vehicle; therefore we do not address that aspect.

For these reasons, we affirm the district court order and judgment of conviction.

LEVINE, MESCHKE and SANDSTROM, JJ., concur.

VANDE WALLE, C.J., concurs in the result.