**STATE of North Dakota, Plaintiff and Appellant**

v.

**Ervin GLAESMAN, Defendant and Appellee.**

Criminal Nos. 950210, 950211.

Supreme Court of North Dakota.

March 19, 1996.

Terry W. Elhard, State's Attorney, Ashley, for plaintiff and appellant.

Donavin L. Grenz, Linton, for defendant and appellee.

SANDSTROM, Justice.

Ervin Glaesman was arrested for being in actual physical control of his motor vehicle while under the influence of intoxicating liquor, and later charged with disorderly conduct in connection with that arrest. The district court, holding the sheriff stopped Glaesman without reasonable and articulable suspicion, suppressed the evidence of both crimes and dismissed the charges. The State appeals from the dismissals. We reverse the dismissal of both charges, and remand.

### I

On February 10, 1995, the McIntosh County sheriff received a telephone report of a pickup truck stuck in the snow in a parking lot near an Ashley grocery store. Although he did not identify himself to the sheriff, the caller was Terry Elhard, the McIntosh County States Attorney and prosecutor in this case, who had observed the pickup. Elhard told the sheriff the driver was Ervin Glaesman. Elhard said nothing to the sheriff about Glaesman's physical condition.

The sheriff and the Ashley chief of police drove to the parking lot. As they drove by the lot, they saw no one in the vehicle. The sheriff testified he went to a local business to find out who had driven the truck to the parking lot. The sheriff then saw another truck had backed up to Glaesman's truck.

As the sheriff walked toward the Glaesman vehicle, he saw the second pickup was connected by a chain to the Glaesman vehicle. The Glaesman vehicle was stuck in a small pile of snow, away from the other parked cars in the parking lot. A smaller pickup had been trying unsuccessfully to extricate the Glaesman vehicle. As the sheriff walked up to the second vehicle, the driver of that vehicle was unhooking a chain connected to Glaesman's vehicle. The sheriff told the driver of the second vehicle that he would take care of the situation. As the sheriff approached the Glaesman vehicle, he saw Glaesman sitting in the driver's seat, and the left front tire spinning in reverse.

The sheriff walked up to the pickup cab. After Glaesman's door was opened, the sheriff smelled alcohol and asked Glaesman to perform several field sobriety tests. During the tests, Glaesman used profane language and was verbally abusive. After arresting Glaesman for being in actual physical control of his vehicle while under the influence of intoxicating liquor, the sheriff transported him to the Ashley Medical Center for a blood sample. At the medical center, Glaesman was aggressive and continued to verbally abuse the sheriff and the chief of police. Glaesman pushed the chief of police and slapped the sheriff. After bond was posted and Glaesman was leaving, he told the sheriff, "just remember the next time I see you out of uniform and without that . . . badge, I am going to kill you, and don't think I am kidding."

On February 10, 1995, Glaesman was charged with actual physical control of a vehicle while under the influence of intoxicating liquor or with a blood alcohol concentration of at least 0.10% by weight in violation of N.D.C.C. § 39–08–01(1)(a) or (b). On February 21, Glaesman was charged with disorderly conduct for his actions in connection with the arrest for actual physical control.

On March 31, 1995, Glaesman moved to suppress the evidence and dismiss both charges. In the motion, Glaesman argued the law enforcement officers did not have a reasonable and articulable suspicion to stop him, and all evidence of both charges must be suppressed under "the fruit of the poison-ous tree doctrine." The motion was heard on May 3.

On June 6, 1995, the district court ordered the evidence suppressed and the charges dismissed in both cases. In its order suppressing the evidence and dismissing the actual physical control charge, the district court found:

"Based on the telephone call of Elhard, the McIntosh County Sheriff's Department drove to the area of the parking lot wherein the defendant's vehicle was stuck in the snow, with the law enforcement officers approaching the defendant who was seated in the pickup, at which time law enforcement officers opened the door of the vehicle and detected an odor of alcohol about the defendant."

The district court also held:

"It is well established that law enforcement officers are required to have a factual basis upon which to premise an articulable suspicion that a defendant either is violating the law or has violated the law prior to either stopping a motorist or conducting a further investigation. Herein, the only basis for the officer's approach of the defendant's vehicle was the suspicion of Mr. Elhard as to the condition of the defendant and then only based upon Mr. Elhard's prior experience with the defendant's use of alcoholic beverages. The same does not constitute articulable suspicion."

In the order suppressing the evidence and dismissing the disorderly conduct charge, the district court held:

"The Court having decided in [the actual physical control] case that the law enforcement officers were without articulable suspicion and/or probable cause to investigate the defendant and his control of his motor vehicle, and further determining that the defendant would not have been in the custody of law enforcement officers but for their wrongful arrest of the defendant, that the Court is likewise compelled to grant the defendant's motion to suppress evidence and the defendant's motion to dismiss the charge against the defendant of one count of Disorderly Conduct."

The State appeals from the orders suppressing the evidence and dismissing both charges.

The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06(1). The appeal from the district court was filed in a timely manner under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. §§ 29–01–12 and 29–28–07.

## II

■ "The State's right to appeal in criminal cases is governed by NDCC 29–28–07, which authorizes an appeal from an order quashing an information." *State v. Ritter,* 472 N.W.2d 444, 447 (N.D.1991). "[T]he State may appeal from a dismissal that has the same effect as an order quashing an information." *State v. Bettenhausen,* 460 N.W.2d 394, 395 (N.D.1990) (citations omitted). "[I]t is not the label which controls, but rather the effect." *State v. Howe,* 247 N.W.2d 647, 652 (N.D.1976).

■ In *State v. Zimmerman,* 529 N.W.2d 171, 173 (N.D.1995), we recently noted our appropriate standard of review in cases such as this. Findings of fact made by a trial court in preliminary proceedings in a criminal case will not be reversed on appeal if, after conflicts in testimony are resolved in favor of affirmance, there is "sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *Zimmerman* (citing *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D.1994)). "We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact." *Zimmerman.* Questions of law are fully reviewable. *Zimmerman* (citing *State v. One Black 1989 Cadillac,* 522 N.W.2d 457, 460 (N.D.1994)); *see also Salter v. North Dakota Dep't of Transp.,* 505 N.W.2d 111, 112 (N.D.1993) (whether officer has reasonable and articulable suspicion motorist is violating the law is a question of law fully reviewable on appeal).

## III

The district court dismissed the actual physical control charge because it concluded the officers stopped Glaesman without reasonable suspicion.

## A

■ On appeal, the State argues that, even if there was a stop, the officers were acting in a "community caretaker" capacity. This Court has recognized community caretaking as justifying law enforcement contact, including stops, without reasonable suspicion of unlawful conduct. *See, e.g., State v. Halfmann,* 518 N.W.2d 729, 730 (N.D.1994) (citing *United States v. Hernandez,* 854 F.2d 295 (8th Cir.1988)); *State v. Brown,* 509 N.W.2d 69, 71 (N.D.1993); *State v. Sarhegyi,* 492 N.W.2d 284, 287–88 (N.D.1992). Because the State did not argue community caretaking to the district court, we do not consider it on appeal. *State v. Steffes,* 500 N.W.2d 608 (N.D.1993).

## B

The State contends there was no stop. The State correctly points out there are different requirements for different levels of police conduct, and approaching a stopped car does not necessarily require either reasonable suspicion or probable cause.

## 1

We have recognized several of the different types of officer-citizen contact, including arrests, which must be supported by probable cause, and "Terry" stops, or seizures which must be supported by a reasonable and articulable suspicion of criminal activity.

■ Not every contact a policeman has with a citizen, however, is an investigative stop or a seizure deserving of Fourth Amendment protection. *United States v. Hernandez,* 854 F.2d 295, 297 (8th Cir.1988) (reasonable and articulable suspicion is not required for an officer to merely inquire of an individual). Protection is afforded to the citizen only when the officer has by means of physical force or show of authority restrained the liberty of the citizen. *State v. Halfmann,* 518 N.W.2d 729, 731 (N.D.1994) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)).

■ In the context of police-citizen contact, a Terry stop, or investigative stop, is a "temporary restraint of a person's freedom resulting in a seizure within the meaning of the Fourth Amendment." *Halfmann* (citing *State v. Sarhegyi*, 492 N.W.2d 284, 285–86 (N.D.1992)). An investigative stop must be "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Halfmann* (citing *State v. Guthmiller*, 499 N.W.2d 590, 592 (N.D.1993)). This protects the citizen's Fourth Amendment right to be free of unreasonable searches and seizures. *Wibben v. N.D. State Highway Com'r*, 413 N.W.2d 329, 331 (N.D.1987).

### 2

■ In concluding the officers stopped Glaesman without reasonable suspicion, the district court specifically found the officers had opened the door on Glaesman's pickup. There is no evidence in the record to support the finding an officer opened Glaesman's pickup door. At the hearing, the sheriff testified he reached out to open the door, but *Glaesman* opened it before he did. There was no other testimony on this point. There is no "evidence fairly capable of supporting the trial court's findings, ..." *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D. 1994).[1] The evidence does not support the finding of a stop before the sheriff smelled the odor of alcohol. The district court wrongly suppressed the evidence and dismissed the actual physical control charge.

### IV

The State argues that regardless of the outcome of the actual physical control charge, the disorderly conduct charge should not have been dismissed. Glaesman argues the district court properly dismissed the disorderly conduct charge when it excluded the "tainted evidence." The district court dismissed the disorderly conduct charge, stating Glaesman would not have been in police custody but for their unlawful stop of his vehicle. Because the district court wrongly found an unlawful stop and wrongly dismissed the actual physical control charge, it follows that it also wrongly suppressed evidence of and dismissed the disorderly conduct charge.

### V

The other arguments raised by Glaesman are without merit or not necessary to resolve this appeal. The orders of the district court suppressing the evidence and dismissing the actual physical control charge and suppressing the evidence and dismissing the disorderly conduct charge are reversed and remanded for proceedings consistent with this opinion.

VANDE WALLE, C.J., and NEUMANN, J., concur.

---

1. The records in these two cases were not and are not consolidated. The affidavit of the officer, attesting to a "tap" on the window, was never in the record of the actual physical control charge and was never introduced or argued by either side, either before the trial court or this Court.

   The dissent suggests that if a judge does not believe the only witness, the judge is entitled to imagine the facts to be something different than what was testified, and then base the decision on those imagined or speculated facts. The sheriff's testimony is the only testimony. Glaesman did not testify.

   Under the dissent's rationale, if a defendant testifies at trial, a fact finder who doesn't find the defendant credible may "by inference" find facts no one testified to, and then find the defendant guilty even if there is no evidence of guilt.

   We reverse if the trial judge's findings are not supported by sufficient competent evidence or are against the manifest weight of the evidence. *State v. Zimmerman*, 529 N.W.2d 171, 173 (N.D. 1995). Here, the trial judge's finding that the

sheriff opened the door is supported by *no* evidence, and is contrary to all the evidence.

In suppression cases, the defendant has the initial burden of establishing a prima facie case that the evidence was illegally seized. *United States v. Evans*, 572 F.2d 455, 486 (5th Cir.1978), cert. denied, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978) ("The burden is on the movant to make specific factual allegations of illegality, to produce evidence, and to persuade the court that the evidence should be suppressed."); *United States v. Phillips*, 540 F.2d 319 (8th Cir. 1976), cert. denied, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976); *U.S. v. Sacco*, 563 F.2d 552, 558 (2d Cir.1977), cert. denied, 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978); *U.S. v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977), cert. denied, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977). Here, because only the sheriff testified, if the court found the sheriff's testimony without credibility, there is *no* credible evidence and no prima facie showing by the defendant.

MESCHKE, Justice, concurring and dissenting.

I agree with reinstating the disorderly conduct charge against Glaesman for trial, and with reversing the suppression of the evidence to that extent. I respectfully dissent from reversing the order suppressing the evidence and dismissing the charge against Glaesman for actual physical control of a motor vehicle while under the influence of alcohol.

The majority recognizes that, because the State did not argue community caretaking to the trial court, we do not consider it in this appeal. *State v. Steffes*, 500 N.W.2d 608 (N.D.1993). The sole question, then, is whether the sheriff made a valid *Terry* "stop" to investigate Glaesman's actions, not whether the sheriff was engaged in a helpful, community caretaking encounter.

The majority correctly says that "the sheriff testified he reached out to open the door, but Glaesman opened it before he did." Still, in my opinion, there is ample circumstantial evidence to support the trial court's finding that the sheriff approached Glaesman's pickup and "opened the door of the vehicle" without an articulable and reasonable suspicion that Glaesman was violating, or had violated, the law.

The sheriff was sent to the scene by a telephone call from the McIntosh County state's attorney, who was defending a then pending Small Claims Court action by Glaesman against a deputy sheriff. The state's attorney's phone call apparently conveyed no specific reason to initiate the investigative stop. Although the sheriff may have known the identity of the caller, detail was lacking in the sheriff's description of the short conversation. When asked about the substance of the conversation, the sheriff testified:

> I do not remember—everything I remember, that there was a pickup stuck in the Super Valu parking lot west of Super— that I want to get to the west side of Super Valu because a vehicle was stuck there that I might be interested in and there was some other conversation.

The sheriff later added the state's attorney "probably" told him who owned the truck.

By the time the sheriff approached the truck, he had personally verified that Glaesman was stuck on a snow pile in the Super Valu parking lot. From his observations, the sheriff knew that the snow pile was small and located away from the other cars in the parking lot. The sheriff took immediate charge of Glaesman by instructing the driver of the helping vehicle, "you can leave I'll take care of this."

While Glaesman did not testify, we have often explained, *e.g.*, *Johnson v. North Dakota Dep't of Transp.*, 530 N.W.2d 359, 361 (N.D.1995), that in disputes over the underlying facts and circumstances for whether an officer had a reasonable and articulable suspicion for an investigative stop, the trier of fact determines the credibility of witnesses and the weight to be given to their testimony. In an affidavit for the disorderly conduct charge (the suppression motions were considered together in a single hearing), the sheriff swore that he had "tapped on the driver's side window" before Glaesman opened the door. "Whatever the officer's motive in tapping on [Glaesman's] car window, a stop occurred." *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 331 (N.D.1987). At the suppression hearing, the sheriff testified he reached out to open the door, but Glaesman opened it before he did. The trial court was entitled to evaluate the sheriff's credibility for inferences from the circumstances, rather than accepting blindly the sheriff's particular testimony on details.

Taken together, the facts of this case do not demonstrate "some objective manifestation that [Glaesman was], or [was] about to be, engaged in criminal activity," or that he had or was violating any traffic law. *State v. Halfmann*, 518 N.W.2d 729, 730–31 (N.D. 1994) (citing *State v. Guthmiller*, 499 N.W.2d 590, 592 (N.D.1993)). I am not convinced that a mistake was made, nor that the trial court's finding the sheriff lacked a reasonable and articulable suspicion for the stop is unsupported by sufficient competent evidence. In my opinion, the evidence was appropriately suppressed, and without any evidence to support the charge, it was appropriately dismissed.

The State argues that, regardless of the outcome of the actual physical control charge, the disorderly conduct charge should not have been dismissed. Glaesman insists the trial court properly dismissed the charge of disorderly conduct when it excluded the "tainted evidence." The trial court dismissed the charge of disorderly conduct, reasoning Glaesman would not have been in police custody but for the unlawful "stop" of his truck.

Whether the "evidence sought to be suppressed was gathered 'by exploitation of that illegality, or instead by means sufficiently distinguishable to be purged of the primary taint,'" must be considered. *State v. Saavedra*, 396 N.W.2d 304, 305 (N.D.1986) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 445 (1963)). Factors that affect the illegal exploitation include "the temporal proximity of the illegality and the fruit of that illegality, the presence of intervening circumstances, and the purpose and flagrancy of the police misconduct." *Saavedra* at 305. *Saavedra* also explained that the purpose of excluding improperly gathered evidence is to deter police misconduct, but that purpose does not justify the use of the rule to exclude evidence of "independent crimes occurring in response to an unlawful search or arrest." *Id.*

Evidence of an accused's aggressive behavior toward an arresting officer will not be suppressed because the initial stop or arrest was unlawful, we have often ruled. In *State v. Indvik*, 382 N.W.2d 623, 627 (N.D.1986), we denied the accused's request to suppress evidence, holding "Indvik's independent and intervening actions of engaging the officer in a high-speed chase, running from the police officers into the woods, drawing a firearm on the police officers—and actually firing it— break the chain of causation and dissipate the taint of the prior illegality, *i.e.*, the invalid stop." In *Saavedra*, 396 N.W.2d 304, this Court ruled evidence of an accused's disorderly conduct that caused his arrest need not be suppressed because the crime was independent of the concededly illegal search of his van and his illegal detention in the patrol car. *See also State v. Kunkel*, 406 N.W.2d 681 (N.D.1987) (holding officers entering accused's room to remove him from home he lived in, arguably unconstitutionally, did not call for suppression of evidence of his attack on officers); *State v. Ritter*, 472 N.W.2d 444, 452 (N.D.1991) ("Forceful resistance to an unlawful ... seizure is no longer automatically excused, as a matter of law, by exclusion of related evidence or by judicial dismissal.").

Here, Glaesman's verbal abuse, threats, and physical attack on the sheriff constituted an independent crime despite the unlawful stop. In my opinion, the trial court's order suppressing the evidence and dismissing the disorderly conduct charge is correctly reversed for these reasons, even though Glaesman's seizure was constitutionally unreasonable.

Therefore, I respectfully dissent from reversing to reinstate the charge of actual physical control, but I agree with reversing to reinstate the charge of disorderly conduct.

BERYL J. LEVINE, Surrogate Judge, concurs.