1997 ND 204

**CITY OF FARGO, Plaintiff and Appellant,**

v.

**Stanley Owen SIVERTSON, Defendant and Appellee.**

Criminal No. 970054.

Supreme Court of North Dakota.

Nov. 6, 1997.

Modified and Rehearing Denied Dec. 3, 1997.

Thomas J. Gaughan (argued), City Prosecutor, Fargo, for plaintiff and appellant.

Richard Edward Edinger (argued), Moorhead, and Richard David Varriano, Moorhead, for defendant and appellee.

MARING, Justice.

[¶1] The City of Fargo appeals from an order suppressing evidence in this DUI prosecution against Stanley Sivertson, because the arresting officer violated Sivertson's Fourth Amendment rights against unreasonable search and seizure. We hold the arresting officer's approach of Sivertson's parked vehicle did not constitute a Fourth Amendment stop, and we reverse the order suppressing evidence and remand.

[¶2] The relevant facts are undisputed. On September 18, 1996 Police Officer Grant Benjamin was dispatched to the scene of an accident at South University Drive in Fargo to conduct an A.L.E.R.T. screening. South University Drive is a two lane one-way southbound street. When Officer Benjamin arrived at the scene, the accident vehicle was in the right lane and behind it were two police vehicles. Sivertson's vehicle was stopped in the right lane about 20 yards behind the other police vehicles. Benjamin stopped his vehicle in the right lane about "10 to 12 car lengths" behind the accident location, a sufficient distance to allow Sivertson room to pull into the left lane and proceed past the accident scene.

[¶3] Officer Benjamin testified two other vehicles passed by the scene in the left lane, but, as he watched for 30 seconds to a minute, Sivertson's vehicle did not move. Benjamin testified:

A. At this time I believe the individual was waiting to approach the traffic stop believing he may know he needed to stop. I activated the arrow stick which directs traffic to go around my vehicle and I got out and approached the vehicle.

\* \* \* \* \* \*

Q. What did you observe at that point?

A. One male individual sitting in the vehicle fixated forward.

Q. Did he ever turn towards you?

A. Once I had knocked on the window.

\* \* \* \* \* \*

Q. When he turned and looked, did you notice anything unusual about his reaction?

A. As I stated, when I knocked on the window he appeared startled. He looked dazed, confused and at that point he had rolled down his window.

Q. When he rolled down his window, did you detect anything unusual?

A. Immediately I detected a strong odor of alcoholic beverages emanating

from the driver's vehicle. The driver's eyes were bloodshot, kind of glassy-eyed. Officer Benjamin ultimately arrested Sivertson for violating the city DUI ordinance.

[¶ 4] Sivertson moved to suppress "all evidence obtained subsequent to the stop of the defendant's vehicle on the grounds that the arresting officer did not have a reasonable and articulable suspicion that the defendant was violating the law." At the suppression hearing, Sivertson's attorney questioned Benjamin about testimony he gave at Sivertson's administrative license revocation hearing:

Q. (Mr. Varriano continuing) Now, Officer Benjamin, when you were asked by Ms. Loberg whether or not you thought Mr. Sivertson was breaking a traffic law, do you remember what you said?

A. I said yes.

Q. That is part of the reason you had contact with Mr. Sivertson?

A. No, sir.

\* \* \* \* \* \*

A. She asked if I thought he was breaking the law. I stated yes in the way that she had worded the question. The night of the scene I was approaching the vehicle. I was not approaching him thinking he had broke the—broken the law, otherwise I would have activated my red traffic lights to speak to him.

\* \* \* \* \* \*

Q. The real question is why did you have contact with Mr. Sivertson when you didn't have to?

A. I wanted to make sure he was all right.

Q. That's it.

A. Yes, sir.

[¶ 5] After the hearing, the district court granted the motion suppressing evidence, concluding:

[T]he burden is on the city to establish either a reasonable and articulable suspicion for the stop or some reasonable basis for treating the conduct as a proper "community caretaker contact." Given the state of the record before it, the court cannot determine the basis for the contact with the defendant. On this basis it is the opinion of the Court that the City has failed to carry its burden of proof.

[¶ 6] On appeal, the City asserts the trial court improperly shifted to it the burden of persuasion. We disagree. A person alleging his rights have been violated under the Fourth Amendment has an initial burden of establishing a prima facie case of illegal seizure. *State v. Glaesman*, 545 N.W.2d 178, 182 n. 1 (N.D.1996); *see also State v. Swenningson*, 297 N.W.2d 405, 407 (N.D.1980). However, after the defendant has made a prima facie case, the burden of persuasion is shifted to the State to justify its actions. *State v. Swenningson*, 297 N.W.2d at 406; *State v. Goehring*, 374 N.W.2d 882, 888 (N.D. 1985); *State v. Frank*, 350 N.W.2d 596, 599 (N.D.1984).

[¶ 7] The City asserts Officer Benjamin's initial contact with Sivertson in the vehicle was an appropriate caretaker encounter and not an illegal stop in violation of Sivertson's Fourth Amendment rights. We agree.

[¶ 8] The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In *State v. Halfmann*, 518 N.W.2d 729, 730–731 (N.D.1994), we explained the various levels of police-citizen contacts:

Courts have recognized three tiers of law enforcement-citizen encounters: (1) arrests, which must be supported by probable cause; (2) *"Terry"* stops, seizures which must be supported by a reasonable and articulable suspicion of criminal activity; and (3) community caretaking encounters, which do not constitute Fourth Amendment seizures.

\* \* \* \* \* \*

"A 'stop' is a temporary restraint of a person's freedom resulting in a seizure within the meaning of the Fourth Amendment." *State v. Sarhegyi*, 492 N.W.2d 284, 285–86 (N.D.1992). "[A]n investigative stop of a moving vehicle 'must be justified by some objective manifestation that the person stopped is, or is about to be, en-

gaged in criminal activity,'" *Guthmiller*, 499 N.W.2d at 592 (citing to *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981)), thus protecting people's Fourth Amendment constitutional right to be free of unreasonable searches and seizures, *see Wibben v. North Dakota State Hwy. Comm'r*, 413 N.W.2d 329, 331 (N.D.1987) (investigative stop is seizure within meaning of Fourth Amendment).

"Not every police contact with a citizen is a seizure." *State v. Langseth*, 492 N.W.2d 298, 300 (1992). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.*

[¶ 9] Ordinarily, an officer must have an articulable and reasonable suspicion that a law has been or is being violated to stop a moving vehicle for an investigation. *State v. Neis*, 469 N.W.2d 568, 569 (N.D. 1991). However, the law distinguishes between approaching an already stopped vehicle and stopping a moving one. *State v. Gahner*, 554 N.W.2d 818, 820 (N.D.1996). We have often explained that an officer's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response. *See, e.g., State v. Franklin*, 524 N.W.2d 603, 605 (N.D.1994). Law enforcement officers frequently act in the role of community caretaker, actions separate from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992). It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place, including a stopped vehicle. *State v. Steinmetz*, 552 N.W.2d 358, 360 (N.D.1996). If, when approaching a parked vehicle in a caretaker encounter, an officer learns something that causes a reasonable suspicion or probable cause, the officer may further investigate, seize, and even arrest. *City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 775 (N.D.1996).

[¶ 10] Here, Officer Benjamin's testimony is clear that his initial encounter with Sivertson was to determine why Sivertson remained parked in the right driving lane instead of proceeding with other traffic in the left lane and to determine if Sivertson was okay. Because Sivertson was "fixated forward" when Benjamin approached the vehicle, Benjamin tapped the window to get Sivertson's attention. When Sivertson became aware of the officer's presence, he immediately and voluntarily rolled down his window. Up to that point, Officer Benjamin's actions in approaching the vehicle and tapping on the window to get Sivertson's attention were a permissible part of a legitimate caretaker encounter and did not constitute a Fourth Amendment stop. *See, e.g., Zejdlik*, 551 N.W.2d at 773 (officer's approach of parked vehicle and repeated knocking on window to get driver's attention was permissible caretaker encounter and not a Fourth Amendment stop). When Sivertson rolled down his window, Officer Benjamin immediately detected a strong odor of alcohol and observed Sivertson's eyes were bloodshot and glassy. The encounter at that moment escalated to a stop, with Officer Benjamin having an articulable and reasonable suspicion Sivertson had violated the law, leading to further investigation and arrest.

[¶ 11] Sivertson claims he was seized, under the circumstances, because he was required by statute to stop for the police cars at the accident scene, which were stopped with flashing red lights. The relevant statute, Section 39–10–26(2), N.D.C.C., provides:

2.   Whenever an emergency vehicle is parked or stopped at the scene of an emergency and is displaying a flashing, revolving, or rotating blue, white, or red light, approaching traffic shall move to the right-hand edge or curb of the roadway and shall stop, but once having stopped, traffic may proceed past the scene at its own risk when the roadway is clear, except when otherwise directed by a police officer.

Sivertson argues:

Under the statute, Defendant had no choice but to stop when he saw the emergency vehicles' flashing lights. When Officer Benjamin pulls his car approximately a

car length behind Defendant, Defendant is sandwiched between three police cars. A reasonable person would believe that he was seized under the Fourth Amendment. Moreover, under the statute, it can be inferred that once you stop your car and there is a police officer directly behind you, the officer will direct traffic. And therefore, you cannot proceed until the officer directs you to proceed.

We disagree with Sivertson's claim he was seized because he was required to stop at the accident scene.

[¶ 12] The statute allows a motorist, who has stopped for an emergency vehicle at an accident scene, to "proceed past the scene" when "the roadway is clear." Other traffic was proceeding in the left lane past the accident scene. The record does not support Sivertson's assertion that he was "sandwiched between three police cars." The undisputed evidence is that there was plenty of space ahead and behind Sivertson's vehicle for him to pull into the left lane and proceed down the street. The statute clearly permits a driver to do so unless specifically directed by a police officer not to proceed.

[¶ 13] Officer Benjamin approached Sivertson's vehicle to see if he was okay and why he was not proceeding with the other traffic. Sivertson made no indication he was even aware of Officer Benjamin's presence until the officer tapped on the window to get his attention. Clearly, the officer was acting in an appropriate caretaker function. We conclude the statute requiring Sivertson to stop at the scene before proceeding on his way does not alter the nature of Officer Benjamin's caretaker approach.

[¶ 14] We will not reverse a trial court's disposition of a motion to suppress if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's determination. *Halfmann*, 518 N.W.2d at 730. We evaluate the evidence to see, based on this standard of review, if it supports the findings of fact. *Glaesman*, 545 N.W.2d at 181. Here, the trial court concluded, "[g]iven the state of the record before it, the court cannot determine the basis for the contact with the defendant." The trial court then concluded the State had

not met its burden of demonstrating no Fourth Amendment violation. The evidence does not support the trial court's conclusion.

[¶ 15] The trial court was concerned with the reference to Officer Benjamin's administrative hearing testimony that he thought Sivertson was breaking the law. However, the transcript from that hearing was not introduced into evidence and it is impossible to glean from this record at what point in time Officer Benjamin held that belief. An officer's subjective intent plays no role in ordinary, probable cause Fourth Amendment analysis. *Whren v. United States*, 517 U.S. 806, ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). We conclude the State carried no burden to demonstrate Officer Benjamin's subjective intent in approaching Sivertson's vehicle. The undisputed evidence is that Officer Benjamin approached Sivertson's vehicle to determine if "he was all right" after observing Sivertson was not proceeding with other traffic in the left lane. Officer Benjamin had a lawful right to approach the vehicle for that caretaking purpose, without implicating Fourth Amendment protections. Reversing the suppression of evidence under similar circumstances, we admonished in *State v. Glaesman*, 545 N.W.2d at 181:

> Not every contact a policeman has with a citizen, however, is an investigative stop or a seizure deserving of Fourth Amendment protection.... Protection is afforded to the citizen only when the officer has by means of physical force or show of authority restrained the liberty of the citizen. (Citation omitted.)

[¶ 16] We conclude there is insufficient competent evidence in this record to support the trial court's conclusion that Sivertson's Fourth Amendment rights against unreasonable search and seizure were violated by Officer Benjamin. The order suppressing evidence is reversed and the case is remanded.

[¶ 17] VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur.

MESCHKE, J., concurs in the result.