Filed 6/7/16 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2016 ND 111

State of North Dakota, Plaintiff and Appellee

v.

Chili Carlene Musselman, Defendant and Appellant

No. 20150250

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Thomas R. Olson, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Gary E. Euren, Assistant State’s Attorney, Cass County Courthouse, P.O. Box 2806, Fargo, N.D. 58108-2806, for plaintiff and appellee; submitted on brief.

Benjamin C. Pulkrabek, 402 First Street NW, Mandan, N.D. 58554-3118, for defendant and appellant; submitted on brief.

State v. Musselman

No. 20150250

Sandstrom, Justice.

[¶1] Chili Musselman appeals after a jury found her guilty of possession of methamphetamine with intent to deliver.  On appeal, she argues a Fourth Amendment violation because the police officers who arrested her did not have reasonable grounds to stop and question her.  Because there was reasonable suspicion to stop her, the order denying the motion to suppress was proper, and we affirm the criminal judgment.

 

I

[¶2] According to testimony at the suppression hearing, in October 2013, Fargo Police Officer Matt Christensen received information from a department detective that Musselman would be traveling from Washington State to Fargo on an Amtrak train and that she would have drugs in her possession.  The detective had obtained this information from a named informant in another case.  Officer Christensen testified the informant’s information given to the detective matched up with other information he had been given from drug task force officers, including Christopher McCarthy.  Officer Christensen passed the information on to other officers, including McCarthy, who were investigating Musselman in another case.

[¶3] Officer McCarthy also testified at the suppression hearing that he and two other agents had been working on a multi-jurisdictional methamphetamine case from Washington to Fargo and that a number of people had told him Musselman was connected to the source for that case.  The officers decided to attempt to make contact with Musselman when she got off the train in Fargo.

[¶4] To verify the information given to him by Officer Christensen, McCarthy testified he spoke to a detective with the Amtrak police who verified that Musselman and a man traveling with her were due to arrive in Fargo on October 23rd.  This information was further verified when the officers, while waiting at the Amtrak station for the train to arrive, noticed a man they recognized as Steven Buzalsky arrive in a vehicle registered to Musselman.  Officer McCarthy testified he saw Musselman and a man with whom she appeared to be traveling get off the train and approach Buzalsky as he got out of the vehicle and walked toward them, further confirming these were the individuals they were looking for, based on the original information from the informant.  Officer McCarthy testified that at this point and with this information at his disposal, he approached Musselman to ask her some questions regarding their investigations.  Officer McCarthy testified his intent in approaching Musselman was to make contact with her and question her, since the information from Officer Christensen was consistent with the information they had that she was bringing drugs from Washington to Fargo.  He testified a decision on any other action, such as an arrest, was to be made during questioning.  Officer McCarthy testified the only time Musselman was ever told she was being detained was after they had actually found methamphetamine in her possession.

[¶5] According to testimony at trial, there were 8 to 10 officers present at the Amtrak station, but only three were involved in actually talking with Musselman and the other individuals.  Officer McCarthy testified Musselman was advised of the information the officers had, and they told her they wanted to speak with her about that information.  He testified she became defensive, denied being involved with narcotics, and stated she wanted to speak with her boyfriend.  Steven Buzalsky walked over to speak with her.  McCarthy testified that when Buzalsky walked over, Musselman attempted to put a black cylinder into his pocket.  Another officer opened the cylinder and identified the substance inside it as methamphetamine.

[¶6] Musselman was charged with possession of methamphetamine with intent to deliver - 3rd offense or more, a class A felony.  Before trial, she moved to suppress the evidence and dismiss the charge, claiming her questioning and arrest were an illegal search and seizure.  The district court denied the motion.  Musselman was found guilty and sentenced to twenty years’ incarceration.  She appealed, and this Court dismissed because the appeal was untimely.  Musselman applied for post-

conviction relief, claiming ineffective assistance of counsel because her attorney failed to appeal in a timely manner.  After an evidentiary hearing, the district court granted partial relief by allowing this appeal of the original conviction.

[¶7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The appeal was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 29-28-06.

 

II

[¶8] On appeal, Musselman argues the police officers’ meeting and questioning her was an unreasonable search and seizure in violation of the Fourth Amendment, and the district court should have suppressed the evidence.

[¶9] We apply a deferential standard of review when reviewing a district court decision on a motion to suppress:

The trial court’s disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.  That standard of review recognizes the importance of the trial court’s opportunity to observe the witnesses and assess their credibility, and we “accord great deference to its decision in suppression matters.”

State v. Sabinash
, 1998 ND 32, ¶ 8, 574 N.W.2d 827 (citations omitted).

[¶10] Not all encounters between law enforcement officers and citizens constitute “seizures” implicating the Fourth Amendment.  
City of Jamestown v. Jerome
, 2002 ND 34, ¶ 5, 639 N.W.2d 478.  “It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place . . . .”  
State v. Leher
, 2002 ND 171, ¶ 7, 653 N.W.2d 56.  A police officer’s “approach . . . is not a seizure if the officer inquires . . . in a conversational manner, does not order the person to do something, and does not demand a response.”  
State v. Langseth
, 492 N.W.2d 298, 300 (N.D. 1992).  A casual encounter between an officer and a citizen can become a seizure if “a reasonable person would view the officer’s actions—if done by another private citizen—as threatening or offensive.”  
State v. Boyd
, 2002 ND 203, ¶ 7, 654 N.W.2d 392.  A seizure occurs only when “the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.”  
Sayler v. North Dakota Dep’t of Transp.
, 2007 ND 165, ¶ 18, 740 N.W.2d 94.  “In the context of law enforcement-citizen contacts, a “Terry” stop, or investigative stop, temporarily restrains an individual’s freedom, which results in a Fourth Amendment seizure.”  
State v. Boyd
, 2002 ND 203, ¶ 13, 654 N.W.2d 392 (citing 
State v. Glaesman
, 545 N.W.2d 178, 182 (N.D. 1996)).

[¶11] In reviewing a 
Terry
 stop, a court must “(1) determine whether the facts warranted the intrusion of the individual’s Fourth Amendment rights, and if so, (2) determine whether the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place.”  
State v. Sarhegyi
, 492 N.W.2d 284, 286 (N.D. 1992).  “We use an objective standard:  would a reasonable person in the officer’s position be justified by some objective evidence in believing the defendant was, or was about to be, engaged in unlawful activity?”  
State v. Boyd
, 2002 ND 203, ¶ 14, 654 N.W.2d 392 (citing 
State v. Indvik
, 382 N.W.2d 623, 627 (N.D. 1986)).

[¶12] To determine whether an officer has a reasonable and articulable suspicion, we examine the information known to the officer at the time of the stop.  
State v. Robertsdahl
, 512 N.W.2d 427, 428 (N.D. 1994) (citing 
State v. Miller
, 510 N.W.2d 638 (N.D. 1994)).  The reasonable-and-articulable-suspicion standard requires that the officer justify the stop “with more than just a vague ‘hunch’ or other non-objective facts; and . . . the articulable facts must produce, by reasonable inference, a 
reasonable
 suspicion of unlawful conduct.”  
Bryl v. Backes
, 477 N.W.2d 809, 811 n.2 (N.D. 1991) (quoting 
State v. VandeHoven
, 388 N.W.2d 857, 858 n.1 (N.D. 1986)).

[¶13] An officer can use information received from other persons along with his or her personal observations to form the factual basis needed for a legal investigatory stop.  
City of Minot v. Nelson
, 462 N.W.2d 460 (N.D. 1990).  We consider the collective information of law enforcement personnel, known by or transmitted to the stopping officer, to determine whether a stop is reasonable under the Fourth Amendment.  
State v. Nelson
, 488 N.W.2d 600, 602 (N.D. 1992).  We have upheld investigatory stops when the stopping officer received a tip from other officers or informants and the officer corroborated the tip with personal observations.  
State v. Kenner
, 1997 ND 1, ¶ 12, 559 N.W.2d 538.  In 
Geiger v. Backes
, 444 N.W.2d 692, 693 (N.D. 1989), we noted law enforcement officers do not have to analyze the individual factors of a case in a vacuum.  They also are not required “to point to a single factor which, standing alone, signals a potential violation of the law.  Rather, officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity.”  
Id.

 

III

[¶14] In this case, the State does not dispute that the stop of Musselman at the Amtrak station was a seizure.  The State concedes that a seizure occurred when the officers approached Musselman to question her for investigative purposes.  The State argues, however, that the seizure was a reasonable, investigatory 
Terry
 stop and did not violate the Fourth Amendment.

[¶15] Both Officer McCarthy and Officer Christensen testified at the suppression hearing regarding the stop and questioning of Musselman.  After hearing their testimony, the district court stated:

With this information that she was arriving in Fargo on a certain time and date by train, this information provided by [the informant], law enforcement gave weight to that tip and decided to follow-up. . . . This was a suitably corroborated tip.  It was corroborated in a number of ways.  And that’s how reliability can be established, through corroboration.  They verified that Ms. Musselman was on the train.  Further, they learned that her vehicle was present in the parking lot awaiting the train.  Thirdly, they were able to identify her upon her arrival in Fargo.  Based upon all of this, . . . the Court finds that there was reasonable and articulable suspicion justifying law enforcement’s investigative stop of Ms. Musselman, which eventually led to her arrest.  Therefore, Ms. Musselman’s Motion to Suppress and/or Dismiss is denied.

[¶16] The United States Supreme Court has held that in evaluating the validity of an investigatory stop to determine whether there was reasonable suspicion of criminal activity, courts must consider the totality of the circumstances.  
United States v. Sokolow
, 490 U.S. 1, 8 (1989).  The Court stated:

Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel.  But we think taken together they amount to reasonable suspicion. . . . We said in 
Reid v. Georgia
, 448 U.S. 438 (1980) (per curiam), “there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.”  
Id.
, at 441, 100 S. Ct., at 2754.  Indeed, 
Terry
 itself involved “a series of acts, each of them perhaps innocent” if viewed separately, “but which taken together warranted further investigation.”

Sokolow
, 490 U.S. at 9-10.

[¶17] Here, Officer McCarthy decided to approach Musselman at the train station after receiving a tip from a known informant and another police officer that Musselman would be transporting drugs on the train.  Officer McCarthy corroborated this tip by verifying with Amtrak police that Musselman was due to arrive on the date indicated by the tip, and by his own observation of her exiting the train.  The tip was further corroborated when the officers observed Musselman’s vehicle arriving in the parking lot and verified the vehicle was hers through a license-plate check.  After corroborating the information received from the informant with his own personal observations, Officer McCarthy approached Musselman to question her regarding the investigation.  We conclude Officer McCarthy had a reasonable and articulable suspicion that a crime had been or was about to be committed and he acted reasonably under the circumstances.  Therefore, “there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.”  
State v. Sabinash
, 1998 ND 32, ¶ 8, 574 N.W.2d 827 (citations omitted).  The district court properly denied the motion to suppress.

 

IV

[¶18] Because the district court properly denied the motion to suppress, we affirm the criminal judgment.

[¶19] Dale V. Sandstrom

Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

David W. Nelson, D.J.

 

[¶20] The Honorable David W. Nelson, District Judge, sitting in place of McEvers, J., disqualified.