2016 ND 174

Benjamin Becerra GARCIA, Appellant

v.

Grant LEVI, Director of the North Dakota Department of Transportation, Appellee.

No. 20160036.

Supreme Court of North Dakota.

Aug. 31, 2016.

Thomas F. Murtha IV, Dickinson, N.D., for appellant.

Michael T. Pitcher, Office of the Attorney General, Bismarck, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Benjamin Garcia appeals from a district court judgment affirming a Department of Transportation hearing officer's decision revoking his driving privileges for 180 days. We conclude a police officer's initial approach of Garcia's parked vehicle was not a seizure and a reasonable and articulable suspicion supported the officer's further investigation. We also conclude North Dakota's test refusal statute and implied consent laws are not unconstitutional as applied in this case, because Garcia refused the police officer's warrantless request to take a chemical breath test after he had been arrested. We affirm.

I

[¶ 2] On April 7, 2015, at about 1:32 a.m., a Dickinson police officer responded to a dispatch call about a male in a silver pickup with no plates screeching the tires and driving around a motel parking lot. The report had come from an unidentified caller at the motel. When the officer arrived at the motel, he located a parked pickup with no license plates matching the general description in the report. The officer parked his patrol vehicle several car lengths away from the pickup without activating his emergency lights and approached the vehicle on foot. The officer observed the driver, later identified as Garcia, sitting in the pickup's driver's seat with the engine running and lights on.

[¶ 3] Once the officer reached the pickup, he asked Garcia to roll down the window and to shut off the vehicle's engine, which Garcia did. The officer could smell a strong odor of alcohol coming from the pickup and observed that Garcia had bloodshot, watery eyes and slurred speech. The officer also observed an open bottle of beer in the back passenger seat. When the officer asked Garcia for his driver's license, Garcia initially gave him a motel key. After asking again, Garcia handed the officer his license.

[¶ 4] The officer asked Garcia to step out of the pickup, and Garcia complied.

When the officer asked Garcia whether he had been drinking, Garcia said that he had had two beers. The officer requested Garcia to perform field sobriety tests. Garcia initially answered questions appropriately regarding the horizontal gaze nystagmus test but indicated he had an eye problem, so the officer did not go forward with that test. When the officer attempted to have him perform other field sobriety tests, Garcia appeared not to understand the instructions. The officer observed Garcia swaying while standing and having a hard time keeping his balance. The officer asked Garcia to take an onsite screening breath test, which Garcia refused.

[¶ 5] The officer placed Garcia under arrest for being in the actual physical control of a motor vehicle while under the influence of alcohol and for refusal of the breath test. After transporting Garcia to the law enforcement center, the officer read him the implied consent advisory. The officer asked Garcia to take a breath test with the Intoxilyzer 8000. Garcia refused. The officer issued a report and notice, including a temporary operator's permit, notifying Garcia of the Department's intent to revoke his driving privileges.

[¶ 6] Garcia requested an administrative hearing, which was held before a Department hearing officer, and Garcia was permitted to testify with an interpreter. The hearing officer subsequently issued findings of fact, conclusions of law, and a decision revoking Garcia's driving privileges for 180 days. Garcia petitioned for reconsideration of the hearing officer's decision, which was denied. Garcia appealed to the district court, which affirmed the Department's decision.

[¶ 7] The appeal to the district court was timely under N.D.C.C. § 28-32-42. The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 28-32-46. The appeal from the district court was timely under N.D.C.C. § 28-32-49, and this Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-32-49.

## II

[¶ 8] We review the administrative revocation of a driver's license under N.D.C.C. § 28-32-46. This Court must affirm an agency's order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Id.; see also* N.D.C.C. § 28-32-49. "[W]e do not make independent findings of fact or substitute our judgment for that of the agency." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). "We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved

by the weight of the evidence from the entire record." *Id.* "An agency's conclusions on questions of law are subject to full review." *Schlittenhart v. N.D. Dep't of Transp.,* 2015 ND 179, ¶ 14, 865 N.W.2d 825 (quoting *Vanlishout v. N.D. Dep't of Transp.,* 2011 ND 138, ¶ 12, 799 N.W.2d 397).

### III

[¶ 9] Garcia argues the Department lacked jurisdiction to proceed with the administrative hearing because the certified written report required by statute, the Report and Notice form, failed to establish reasonable articulable suspicion to stop or detain him. During oral argument to this Court, however, Garcia conceded the Department had jurisdiction to proceed with the hearing. We conclude his argument is without merit and need not be addressed further.

### IV

[¶ 10] Garcia argues the hearing officer erred in the findings of fact and conclusions of law because the stop or detention of Garcia was illegal.

[¶ 11] All searches and seizures must be reasonable under the Fourth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, and article I, section 8, of the North Dakota Constitution. *Richter v. N.D. Dep't of Transp.,* 2010 ND 150, ¶ 9, 786 N.W.2d 716. Not all encounters between police officers and citizens, however, are seizures that implicate the Fourth Amendment. *State v. Musselman,* 2016 ND 111, ¶ 10, 881 N.W.2d 201. "It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place." *Id.* (quoting *State v. Leher,* 2002 ND 171, ¶ 7, 653 N.W.2d 56). Similarly, in *Richter,* at ¶ 10, this Court discussed the difference between a police officer's approach of a stopped vehicle and the stop of a moving one:

We have also distinguished between an officer's approach of a parked vehicle and the stop of a moving vehicle. *State v. Franklin,* 524 N.W.2d 603, 604 (N.D. 1994). We have explained that an "officer's approach of a parked vehicle is not a seizure if the officer 'inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response.'" *City of Jamestown v. Jerome,* 2002 ND 34, ¶ 5, 639 N.W.2d 478 (quoting *State v. Langseth,* 492 N.W.2d 298, 300 (N.D.1992)). A "casual encounter" may also lead to a seizure where "an officer ... learn[s] something during a ... casual encounter that leads to a reasonable suspicion and that reasonably justifies further investigation, a seizure, or even an arrest." *Langseth,* 492 N.W.2d at 300. "A seizure occurs within the context of the Fourth Amendment only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Jerome,* at ¶ 5. "'[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Koskela,* 329 N.W.2d 587, 589 (N.D.1983) (quoting [*U.S. v.]Mendenhall,* 446 U.S. [544,] 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 [ (1980) ].) "'Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," ... and not on the officer's actual state of mind at the time the challenged action was taken.'" *State v. Smith,* 452 N.W.2d 86, 88 (N.D.1990) (quoting *Maryland v. Ma-*

*con,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985)).

*Richter,* 2010 ND 150, ¶ 10, 786 N.W.2d 716.

■ ■ [¶ 12] "In the context of law enforcement-citizen contacts, a 'Terry' stop, or investigative stop, temporarily restrains an individual's freedom, which results in a Fourth Amendment seizure." *Mussel-man,* 2016 ND 111, ¶ 10, 881 N.W.2d 201 (quoting *State v. Boyd,* 2002 ND 203, ¶ 13, 654 N.W.2d 392). In reviewing a *Terry* stop, a court must "(1) determine whether the facts warranted the intrusion of the individual's Fourth Amendment rights, and if so, (2) determine whether the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place." *State v. Sarhe-gyi,* 492 N.W.2d 284, 286 (N.D.1992). "We use an objective standard: would a reasonable person in the officer's position be justified by some objective evidence in believing the defendant was, or was about to be, engaged in unlawful activity?" *Boyd,* at ¶ 14. In *Musselman,* at ¶¶ 12–13, we further explained:

> To determine whether an officer has a reasonable and articulable suspicion, we examine the information known to the officer at the time of the stop. *State v. Robertsdahl,* 512 N.W.2d 427, 428 (N.D. 1994) (citing *State v. Miller,* 510 N.W.2d 638 (N.D.1994)). The reasonable-and-articulable-suspicion standard requires that the officer justify the stop "with more than just a vague 'hunch' or other non-objective facts; and ... the articulable facts must produce, by reasonable inference, a *reasonable* suspicion of unlawful conduct." *Bryl v. Backes,* 477 N.W.2d 809, 811 n. 2 (N.D.1991) (quoting *State v. VandeHoven,* 388 N.W.2d 857, 858 n. 1 (N.D.1986)).

An officer can use information received from other persons along with his or her personal observations to form the factual basis needed for a legal investigatory stop. *City of Minot v. Nelson,* 462 N.W.2d 460 (N.D.1990). We consider the collective information of law enforcement personnel, known by or transmitted to the stopping officer, to determine whether a stop is reasonable under the Fourth Amendment. *State v. Nelson,* 488 N.W.2d 600, 602 (N.D.1992). We have upheld investigatory stops when the stopping officer received a tip from other officers or informants and the officer corroborated the tip with personal observations. *State v. Kenner,* 1997 ND 1, ¶ 12, 559 N.W.2d 538.

[¶ 13] Garcia argues the law enforcement officer "stopped" his vehicle when the officer approached his parked vehicle and "told" him to roll down the window and to turn the vehicle off. He contends the stop was illegal because the officer told Garcia to do something and demanded a response before the officer had observed any illegal activity. Because the officer would not need either reasonable suspicion or probable cause to approach Garcia's pickup, the question here is whether the officer escalated a "casual encounter" into a seizure by ordering Garcia "to do something, by demanding a response, or by threatening [him] with a show of authority or command." *Jerome,* 2002 ND 34, ¶ 9, 639 N.W.2d 478.

[¶ 14] Here the police officer testified at the hearing he was responding to a dispatch that a caller from the motel had stated a male in a silver pickup with no license plates was "screeching the tires and driving around the parking lot." The officer testified he had been only four or five blocks down the road, had driven to the motel parking lot, and had stopped his patrol vehicle three or four car lengths away from a vehicle matching the description without activating his emergency light

or blocking the vehicle. The officer "observed a silver pickup truck with no plates, lights on, running, and a male sitting in the ... driver's side." He testified he slowly walked up to the passenger side of the vehicle to see "what was going to happen next" when "[t]he male kind of popped up from the seat a little bit" and looked at the officer. The officer testified he then "asked" Garcia to roll down the window and "asked" him to shut his vehicle off. He testified he asked him to shut off the engine for safety purposes, so the officer could cross either in front of or behind the pickup. Garcia provided no contradictory evidence at the hearing showing the officer demanded or ordered Garcia to respond to him.

■ [¶ 15] In analyzing whether a seizure occurred, we consider whether there was the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Richter*, 2010 ND 150, ¶ 15, 786 N.W.2d 716 (quoting *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870). For example, in *Abernathey v. Dep't of Transp.*, 2009 ND 122, ¶ 15, 768 N.W.2d 485, we held a driver was not seized when the officer approached the driver's vehicle, knocked on the window, and asked him to roll down the window. We also cited numerous cases holding a vehicle's occupant has not been "seized" when a police officer requests, rather than orders or commands, the occupant to open a window or exit the vehicle. *Id.* at ¶ 12; *see State v. Steffes*, 2010 ND 232, ¶¶ 9–14, 791 N.W.2d 633 (no seizure when the officer repeated knocking on the window, orally requested the driver to roll down the window or open the door, hand-gestured indicating the same, and re-

quested the driver turn down the radio once the door was opened).

■ [¶ 16] On the basis of the record, we conclude a seizure for Fourth Amendment purposes did not occur when the officer initially made contact with Garcia at his vehicle. The officer parked three to four car lengths away and slowly walked up to the vehicle. The officer observed a male in a silver pickup with no license plates, matching the dispatch description. The officer asked, rather than demanded or ordered, Garcia to roll his window down and to shut off the engine. We conclude, under the totality of the circumstances, there is not sufficient evidence of a "show of authority" to establish the officer's initial approach escalated the encounter into a seizure for Fourth Amendment purposes.

■ [¶ 17] Even if a seizure occurred when the officer in this case asked Garcia to turn off his running vehicle, we conclude reasonable and articulable suspicion supported the officer's further investigation at this point. Considering the early morning hour, the closeness of the officer in location when he received the dispatch, the corroboration of the "only vehicle in the parking lot" matching the description of the report, and a male occupant who "popped up from the seat a little bit" of the running pickup when the officer approached, we conclude the officer had reasonable and articulable suspicion that criminal activity was afoot.

[¶ 18] When the officer spoke with Garcia after he rolled his window down, the officer noticed the strong odor of alcohol coming from the vehicle, saw that Garcia's eyes were bloodshot and watery, and observed his speech was slurred. The officer also saw an opened beer bottle within arm's length away in the back passenger seat. The officer testified that at this point he decided to detain Garcia. We conclude the police officer's detention of

Garcia was not illegal under the totality of the circumstances.

## V

[¶ 19] Garcia argues the hearing officer erred in her conclusions of law because North Dakota's test refusal statute, N.D.C.C. § 39–08–01(1)(e), and implied consent law, N.D.C.C. ch. 39–20, violate the constitutional prohibition against unreasonable searches and seizures, are unconstitutional for denying substantive due process, and are unconstitutional for penalizing the exercise of a constitutional right and penalizing the constitutional right to withhold consent to a warrantless search or withdraw consent once given. He further argues North Dakota's test refusal and implied consent laws are unenforceable and unconstitutional under the doctrine of unconstitutional conditions and conflict with N.D. Const. art. I, § 20.

[¶ 20] Although this Court has previously rejected Garcia's arguments that North Dakota's implied consent and test refusal laws are unconstitutional, in addition to his arguments based on the unconstitutional conditions doctrine and N.D. Const. art. I, § 20, the United States Supreme Court definitively addressed the constitutionality of our statutory scheme in *Birchfield v. North Dakota*, —— U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). In *Birchfield*, 136 S.Ct. at 2185, the Supreme Court held the Fourth Amendment does not permit warrantless blood tests for driving under the influence, but warrantless breath tests incident to arrest for driving under the influence are permissible. The Court explained that "[b]ecause breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests, we conclude that a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving."

*Id.* The Supreme Court therefore has essentially approved a per se rule allowing warrantless breath tests as a search incident to an arrest for driving or being in actual physical control of a motor vehicle while under the influence of alcohol.

[¶ 21] In this case Garcia refused the police officer's request to take an onsite screening breath test and was arrested for both refusal and actual physical control. Garcia also refused an Intoxilyzer 8000 breath test after he had been arrested and transported to the law enforcement center. After the administrative hearing, the hearing officer dismissed the issues relating to refusal of the pre-arrest onsite breath test, but, regarding the post-arrest breath test refusal, concluded that the officer had reasonable grounds to believe Garcia had been driving or was in actual physical control of a vehicle while under the influence in violation of N.D.C.C. § 39–08–01, that Garcia was placed under arrest, and that Garcia refused to submit to the test or tests.

[¶ 22] Because our implied consent and test refusal laws are constitutional as applied to a warrantless breath test incident to arrest for being in actual physical control of a motor vehicle while under the influence of alcohol, we conclude Garcia's constitutional rights were not violated and his arguments on appeal are without merit.

## VI

[¶ 23] The judgment is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.