2017 ND 74

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Caren Charaye ASHBY, Defendant and Appellee**

**No. 20160157**

Supreme Court of North Dakota.

Filed 03/30/2017

Kathleen K. Murray, State's Attorney, Wells County State's Attorney Office, 700 Railway Street N., #325, Fessenden, ND 58438, for plaintiff and appellant.

Garrett D. Ludwig, 103 Collins Avenue, P.O. Box 1266, Mandan, ND 58554–7266, for defendant and appellee.

Kapsner, Justice.

[¶ 1] The State appeals from a district court order granting Caren Ashby's motion to suppress evidence seized after a traffic stop. Suppression was based on the district court's conclusion that the officer did not have reasonable suspicion to initiate a traffic stop. The State argues the traffic stop was supported by reasonable suspicion. We reverse and remand.

I

[¶ 2] Caren Ashby was arrested for several drug related offenses after a traffic stop in Wells County on August 26, 2015. Caren Ashby moved to suppress all evidence seized from the traffic stop, and the State opposed the motion. Caren Ashby challenged the validity of the traffic stop and argued all evidence uncovered should be suppressed. The State argued the traffic stop was supported by reasonable suspicion or was valid as a community caretaking function. The district court held a hearing. At the hearing, the arresting officer testified he was on patrol the day of the arrest and received a "BOLO" teletype alert at 11:58 a.m. This alert was entitled "NDSLIC Request for Information/Case Support" and stated:

> WELFARE CHECK ON 2 MINOR CHILDREN, [two children's names and dates of birth]. THE PARENTS ARE MATTHEW AND CAREN ASHBY AND ARE REPORTEDLY USING DRUGS HEAVILY. SOCIAL SERVICES HAS BEEN TRYING TO MAKE CONTACT REPEATEDLY BUT THEY CONTINUE TO AVOID THEM. THEY MAY BE DRIVING A 2007 WHITE CROWN VIC WITH WA/ LIC ATN6050. THE PAINT IS PEALING ON THE HOOD OR A LATE 1990'S DARK BROWN CHEVY SUBURBAN WITH NO LICENSE PLATES. IF LOCATED, PLEASE CONTACT STUTSMAN COUNTY SOCIAL SERVICES AT (LIBBY (701)269–XXXX) OR (STEPH (701)490–XXXX).

The officer testified because this BOLO originated from Jamestown, he believed it would be pertinent to him because he patrolled in that area.

[¶ 3] The officer continued patrol, traveling on Highway 52. The officer testified he spotted a white Ford Crown Victoria with peeling paint on the hood and Washington plates traveling the opposite direction on Highway 52 at 1:17 p.m. The officer noticed it matched the description from the BOLO and immediately turned around to follow the vehicle. The officer testified as he caught up to the vehicle, it "immediately turned off onto the rest area in Sykeston, on the north side of Highway 52." The officer "thought it was interesting that [the vehicle] immediately turned right off the highway." The officer testified this indicated "[a]lmost the premise of … eluding, due to the fact that they were aware that I was there, and it's not a very active rest area. So, it kind of sparked my interest and a little bit of suspicion." The officer continued to travel on Highway 52 and turned right to travel north on Highway 30, which is adjacent to the rest area. The officer pulled into a field approach to face the direction of the rest area parking lot to observe the vehicle and its occupants. The officer saw an adult female, adult male, and two small children outside the vehicle. The officer testified the vehicle and individuals were at the rest stop for about five minutes and none entered the rest stop facility during that time.

[¶ 4] While observing the individuals, the officer made phone calls in an effort to confirm the information from the BOLO. The officer determined the vehicle, male and female occupants, and two small children matched the information from the BOLO. The officer then called Stutsman County Social Services and spoke to Libby, who was named as a contact person in the BOLO. The officer testified Libby told him "Matthew and Caren were known drug users; heavy users at that" and that "family had reported them using hard drugs and methamphetamine and heroin and things of that nature." The officer

testified Libby indicated she was "concerned for their children, due to the fact that both of them were using and involved in drugs." The officer testified Libby told him Stutsman and Ward County Social Services and Ward County Narcotics Task Force were investigating the Ashbys. The officer testified he believed it was significant the task force was investigating the Ashbys. The officer testified Stutsman County Social Services indicated they had been trying to make contact with the Ashbys since January 2015.

[¶ 5] The officer also spoke with Officer Ackland of the Jamestown Police Department about the BOLO. The officer testified:

Officer Ackland stated that he was in contact with Libby from social services; had received a phone call from her in regards to Matthew and Caren Ashby and both of their children. From further … on in the conversation, Officer Ackland stated that he had made personal contact with Caren's grandmother, at which point he stated that Caren's grandmother was supposed to be watching the kids that day and that Matthew and Caren had showed up and had taken the kids. And that … Caren's grandmother stated that Caren was high on heroin.

According to the officer, Officer Ackland stated Caren's grandmother was concerned about the children's well being. The officer testified he was considering making a welfare check "to make sure that both kids were okay" and to investigate "child endangerment," based on the report of the Ashbys being "known drug users and abusers" and the potential presence of drugs and drug paraphernalia in an area accessible to the children.

[¶ 6] The officer followed the vehicle after it left the Sykeston rest stop. The

officer checked the vehicle's license plate information records, which revealed Caren Ashby was the registered owner. While following the vehicle, the officer contacted a highway patrol sergeant to verify whether he was still within North Dakota Highway Patrol policy and procedure to conduct a child welfare stop. The officer testified he relayed all the information he had to the sergeant, who indicated he would be following procedure if he initiated a stop. Near Fessenden, the officer called the Wells County Sheriff's Office to see if they would be available to assist with the traffic stop. The officer testified he had seen no erratic driving while following the vehicle. The officer indicated he was able to determine the female was driving the vehicle as he followed. The vehicle turned into a frontage road leading to a gas station in Fessenden. The officer indicated, regardless of what the in-car video may have shown, he did not recall whether there was a lack of turn signal when the car made the turn off the highway. Shortly thereafter, the officer initiated the traffic stop, approached the vehicle to speak with Caren Ashby, and asked her to exit the vehicle. Ultimately, the officer spoke with Matthew Ashby, who apparently volunteered there was a marijuana pipe in the car. The officer searched the vehicle, found more contraband, and arrested the occupants.

[¶ 7] After the suppression hearing, the district court issued an order granting Caren Ashby's motion to suppress. The district court concluded the arresting officer's purpose in initiating the traffic stop was to investigate a violation of law, rather than engage in a community caretaking function. The district court determined the arresting officer did not have a reasonable and articulable suspicion to support the traffic stop. The State timely filed a notice of appeal and an affidavit as required under N.D.C.C. § 29–28–07(5).

## II

[¶ 8] On appeal, the State argues the district court erred by granting Caren Ashby's motion to suppress evidence. The State contends the officer had a reasonable and articulable suspicion of criminal activity to support the traffic stop of the Ashbys' vehicle. The State argues the district court misapplied the law when it determined the officer was required to make an independent corroboration of heroin use, a traffic offense, or erratic driving in order to be a lawful traffic stop. The Fourth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, and Article I, section 8, of the North Dakota Constitution, protect individuals from unreasonable searches and seizures. State v. Matthews, 2003 ND 108, ¶ 9, 665 N.W.2d 28. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." Whren v. United States, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

[¶ 9] This Court reviews a district court's decision on a motion to suppress as follows:

[T]his Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

State v. Knox, 2016 ND 15, ¶ 6, 873 N.W.2d 664 (quoting State v. Bauer, 2015

ND 132, ¶ 4, 863 N.W.2d 534). "An officer conducting an investigatory traffic stop must have a reasonable and articulable suspicion the motorist has violated or is violating the law." Knox, 2016 ND 15, ¶ 7, 873 N.W.2d 664. In determining whether an officer has a reasonable and articulable suspicion, this Court examines the information known to the officer at the time of the stop. State v. Musselman, 2016 ND 111, ¶ 12, 881 N.W.2d 201. We have recognized, "[t]he reasonable-and-articulable-suspicion standard requires that the officer justify the stop with more than just a vague hunch or other non-objective facts; and ... the articulable facts must produce, by reasonable inference, a reasonable suspicion of unlawful conduct." Id. (emphasis in original) (citation and quotation marks omitted). "An officer has reasonable suspicion if, under the totality of the circumstances, a reasonable person in the officer's position would be justified by some objective manifestation to believe that the person stopped engaged in or was about to engage in criminal activity." Knox, 2016 ND 15, ¶ 7, 873 N.W.2d 664. "[L]aw enforcement officers do not have to analyze the individual factors of a case in a vacuum." Musselman, 2016 ND 111, ¶ 13, 881 N.W.2d 201. "[O]fficers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." Id. (quoting Geiger v. Backes, 444 N.W.2d 692, 693 (N.D. 1989)). Whether the facts in a particular case support a reasonable and articulable suspicion is a question of law which is fully reviewable on appeal. City of Dickinson v. Hewson, 2011 ND 187, ¶ 6, 803 N.W.2d 814.

[¶ 10] The officer in this case had certain information available to him prior to initiating the traffic stop on the Ashbys'

vehicle. The officer indicated he did not personally observe erratic driving behavior or violation of any traffic laws. As a result, this Court's attention in reviewing whether the officer had reasonable suspicion centers primarily around the information reported to the officer and the reliability of the tip.

[¶ 11] This Court has recognized information obtained from an informant or a tip "may provide the factual basis for a stop if it provides the officer with a reasonable suspicion." Knox, 2016 ND 15, ¶ 8, 873 N.W.2d 664. The reliability of an informant is relevant to determine whether an officer had reasonable suspicion. Id. "Although the totality-of-the-circumstances approach makes categorization difficult, our cases involving reasonable suspicion arising from an informant's tip demonstrate the inverse relationship between quantity and quality, and may be analyzed generally according to the type of tip and, hence, its reliability." State v. Miller, 510 N.W.2d 638, 640 (N.D. 1994). "As a general rule, the lesser the quality or reliability of the tip, the greater the quantity of information required to raise a reasonable suspicion." Hewson, 2011 ND 187, ¶ 9, 803 N.W.2d 814 (citations omitted). We have recognized "[c]itizen informants are presumed to be a reliable source of information." State v. Ebel, 2006 ND 212, ¶ 15, 723 N.W.2d 375. However, "[i]nformation from an informant whose identity is easily ascertainable has a higher indicia of reliability than information obtained from a purely anonymous informant." Hewson, 2011 ND 187, ¶ 10, 803 N.W.2d 814.

[¶ 12] In Miller, an individual identifying himself as "Jody with Wendy's" reported a possible drunk driver to dispatch, who then contacted a police officer. 510 N.W.2d at 639. The informant stated the driver "could barely hold his head up" and pro-

vided a license plate number for the vehicle. Id. The dispatcher relayed the information, but did not tell the officer the informant was identified. Id. This Court held the informant should be treated as anonymous because the officer deciding to make the stop did not know the informant was known or identifiable. Id. at 644.

[¶ 13] In Anderson v. Director, N.D. Dep't of Transp., 2005 ND 97, ¶ 14, 696 N.W.2d 918, this Court explained the distinction between an anonymous informant and one who is easily ascertainable:

> Whereas, in Miller, we held the informant was anonymous because the identity was not relayed to the arresting officer, the informant in this case was not anonymous because his identity, while unknown to the arresting deputy at the time of the stop, was easily ascertainable. The arresting deputy was aware, via the informant's report to dispatch thereafter relayed to him, that the informant was driving a particular vehicle and following the suspect's vehicle. The deputy observed the informant's vehicle pull over at the time of the stop and knew the informant was being interviewed by an assisting deputy at the same time he had stopped Anderson.

The district court determined Caren Ashby's grandmother, while her name was never provided, was not anonymous and should be afforded a presumption of reliability. However, the district court determined the quantity of evidence the tip provided was "very small." The district court noted there was no evidence about how the grandmother knew Caren Ashby was high on heroin, whether she saw Caren Ashby use heroin, or whether the grandmother had any experience identifying a person under the influence of heroin. However, Caren Ashby's grandmother, like the driver who reported the defendant in Anderson, was someone whose identity was easily ascertainable. "Information from an informant whose identity is easily ascertainable has a higher indicia of reliability than information obtained from a purely anonymous informant." Hewson, 2011 ND 187, ¶ 10, 803 N.W.2d 814. "As the reliability of the tip moves up on the scale, the quantity of the information sufficient to raise a reasonable and articulable suspicion is less." Anderson, 2005 ND 97, ¶ 18, 696 N.W.2d 918.

[¶ 14] Caren Ashby's grandmother reported Caren Ashby was high on heroin, and the district court found this to be a "bare assertion of drug usage." However, the tip asserted Caren Ashby was specifically high on heroin, rather than a report of her simply being on drugs or drunk. The tip carries a certain level of severity and specificity in that Caren Ashby was not simply reported to be high on heroin, but high on heroin in the presence of her children in a vehicle. The arresting officer testified:

> Officer Ackland stated that he had made personal contact with Caren's grandmother, at which point he stated that Caren's grandmother was supposed to be watching the kids that day and that Matthew and Caren had showed up and had taken the kids. And that … Caren's grandmother stated that Caren was high on heroin.

Based on this testimony, there is some indication Caren Ashby's grandmother had reached the conclusion that Caren Ashby was high on heroin based upon her firsthand observation sometime earlier the same day. This Court has recognized, "officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." Musselman, 2016 ND

111, ¶ 13, 881 N.W.2d 201. Along with the tip itself, the officer testified Caren Ashby's grandmother had communicated she was concerned about the children's well being. It was also reported to the officer the Ashbys were "known drug users and abusers." In light of this, the officer had indicated he had a desire to investigate the potential presence of drugs in an area accessible to the children.

[¶ 15] The district court's analysis focused on whether the tip, in the absence of an independent corroboration of erratic driving, was sufficient to constitute reasonable suspicion of impaired driving. Here, the information conveyed in the tip raised the possibility of several crimes being committed including, but not limited to: driving under the influence of an intoxicating substance, possession of a controlled substance, possession of drug paraphernalia, endangerment of a child, and reckless endangerment. The tip's content did not necessarily require independent corroboration of drug use or erratic driving in order to constitute reasonable suspicion for a traffic stop. The statute for reckless endangerment provides, "A person is guilty of an offense if he creates a substantial risk of serious bodily injury or death to another.... There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized." N.D.C.C. § 12.1–17–03. The district court's order does not consider the possibility of reasonable suspicion of other crimes, such as those listed above. The officer testified he had concerns for the children's welfare because of the potential for drugs to be present in an area accessible by the children. This indicates not only a potential for a community caretaking function, had the officer acted in such a manner, but it supports a reasonable and articulable suspicion of criminal activity under the totality of the circumstances.

[¶ 16] Under the totality of the circumstances, the traffic stop was supported by reasonable suspicion. Caren Ashby's grandmother was easily ascertainable, and her tip carried higher indicia of reliability than one from an anonymous informant. Hewson, 2011 ND 187, ¶ 10, 803 N.W.2d 814. Although the testifying officer was unsure whether Officer Ackland spoke with Caren Ashby's grandmother in person or over the phone, the officer testified he knew the two had spoken directly with one another. The officer had information from the BOLO which indicated two children were in a vehicle with two parents who were reportedly using drugs, the officer confirmed the identifying information included in the BOLO, the officer knew Officer Ackland had spoken with Caren Ashby's grandmother who was supposed to watch the children that day, Officer Ackland indicated Caren Ashby's grandmother reported she was concerned for the children's safety because she believed Caren Ashby was high on heroin when picking up the children, the officer had learned from Libby at Stutsman County Social Services of investigations into the Ashbys by three separate agencies, the officer felt it was at least somewhat suspicious that the Ashbys' vehicle turned off at a rest stop as soon as his patrol car had caught up to it, and the officer's inferences and concern for the safety of the children based on the potential for drugs or drug paraphernalia within reach of the children in the car. A woman, likely to be registered owner Caren Ashby, whom her grandmother believed to be high on heroin, was observed driving the car. Under the totality of the circumstances, the officer had reasonable suspicion of one of several potential criminal violations including: reckless endangerment, ingestion of a controlled substance, possession of a controlled substance, possession of drug paraphernalia, or endangerment of a child.

Even excluding the Ashbys' vehicle turning into the rest stop and the fact the officer observed no erratic driving, there was enough information under the totality of the circumstances to support reasonable suspicion.

[¶ 17] The test for whether reasonable and articulable suspicion exists involves a determination whether "under the totality of the circumstances, a reasonable person in the officer's position would be justified by some objective manifestation to believe that the person stopped engaged in or was about to engage in criminal activity." Knox, 2016 ND 15, ¶ 7, 873 N.W.2d 664. We defer to the district court's findings of fact and ability to judge the credibility of witnesses, but whether reasonable suspicion exists is a question of law. Hewson, 2011 ND 187, ¶ 6, 803 N.W.2d 814. The district court considered only whether the officer had reasonable suspicion of just impaired driving, rather than reasonable suspicion of criminal activity. As a result, the district court misapplied the law when it determined the officer needed to specifically corroborate evidence of impaired driving for the traffic stop to be lawful.

### III

[¶ 18] It is unnecessary to reach the merits of the State's alternative arguments. We conclude, under the totality of the circumstances, the officer had reasonable suspicion of criminal activity, and the district court erred when it granted Caren Ashby's motion to suppress evidence. We therefore reverse the district court's order and remand for further proceedings.

[¶ 19] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Dale V. Sandstrom, S.J.

Gerald W. VandeWalle, C.J.

[¶ 20] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.