# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 216

State of North Dakota,                                        Plaintiff and Appellee

v.

John Edward Casson, Jr.,                                      Defendant and Appellant

No. 20190028

Appeal from the District Court of Mercer County, South Central Judicial District, the Honorable Bruce A. Romanick, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice.

Jessica J. Binder, State's Attorney, Stanton, ND, for plaintiff and appellee.

Todd N. Ewell, Bismarck, ND, for defendant and appellant.

**State v. Casson**

**No. 20190028**

**Jensen, Justice.**

[¶1]    John Casson appeals from a criminal judgment entered after his conditional plea of guilty to possession of a controlled substance and drug paraphernalia, reserving the right to appeal the denial of his motion to suppress evidence.  On appeal, Casson argues the district court erred in denying his motion to suppress because law enforcement lacked reasonable suspicion to detain him and unlawfully seized him by stating a K-9 unit would be called to complete a "sniff" of Casson's vehicle.  We conclude that although Casson was seized, sufficient reasonable suspicion existed to detain Casson and we affirm the judgment of the district court.

[¶2]    While off-duty, a narcotics task force officer observed Casson traveling to a local park known for drug use and sales.  Previous reports had identified Casson as part of the drug trade in the park. Law enforcement cameras set up in the area had captured images of Casson's truck in the immediate vicinity of the park on numerous occasions.  The off-duty narcotics officer contacted an on-duty Sheriff's deputy, and the two met to "check on" the truck.

[¶3]    The two law enforcement officers parked somewhere behind Casson's vehicle in a secluded area of the park.  The officers, during their conversation with Casson, informed him the reason they had approached him was because of increased drug activity in the park. Casson complied with a request to produce identification.

[¶4]    Law enforcement testified "after I explained everything to Mr. Casson, I did ask him if I could get consent to have the deputy check his vehicle . . . ."  Casson told the officer he did not want them to search his vehicle.

[¶5]    Upon denying the request to search his vehicle, Casson was told a K-9 unit would perform a "sniff" of the vehicle.  Casson's response, as testified to by the narcotics officer, was an immediate concession that calling the K-9 wouldn't be "necessary."

[¶6] Casson contends he was seized without sufficient reasonable suspicion to justify the seizure. The State contends Casson was not seized and, if determined to have been seized, his seizure was justified by reasonable suspicion Casson was engaged in or about to engage in criminal activity.

[¶7] "The Fourth Amendment of the United States Constitution and Article I, Section 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures." *State v. Gagnon*, 2012 ND 198, ¶ 8, 821 N.W.2d 373. We have previously recognized a "person alleging a Fourth Amendment violation has an initial burden of establishing a prima facie case of an illegal search or seizure." *State v. Schmidt*, 2016 ND 187, ¶ 8, 885 N.W.2d 65 (citing *State v. Lanctot*, 1998 ND 216, ¶ 8, 587 N.W.2d 568; *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 6, 571 N.W.2d 137). "However, after the defendant has made a prima facie case, the burden of persuasion is shifted to the State to justify its actions." *Sivertson*, at ¶ 6. "The movant initially has the burden to make specific allegations of illegality and to produce evidence to persuade the court the evidence should be suppressed." *State v. Pogue*, 2015 N.D. 211, ¶ 10, 868 N.W.2d 522 (citing *State v. Glaesman*, 545 N.W.2d 178, 182 n. 1 (N.D.1996)). "Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law." *Schmidt*, at ¶ 8 (citing *State v. Uran*, 2008 ND 223, ¶ 5, 758 N.W.2d 727).

[¶8] A person has been "seized" within the meaning of the Fourth Amendment if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that they were not free to leave. *State v. Fields*, 2003 ND 81, ¶ 11, 662 N.W.2d 242. In *Fields*, after being stopped for a traffic violation, the defendant refused to consent to a search of his vehicle. *Id*. at ¶ 12. The defendant was told that a K-9 unit would be called to "sniff" the defendant's vehicle. *Id*. The defendant was asked to get out of his vehicle and stand next to the officer. *Id*. This Court concluded "it is reasonable to believe that a person in Fields' position would not have felt free to leave the scene. We conclude that Fields was seized within the meaning of the Fourth Amendment when he was held awaiting the arrival of the drug

detection dog." *Id*. Both parties relied on our opinion in *Fields* to support their arguments on appeal and before the district court.

[¶9] The facts of this case differ from *Fields*. The defendant in *Fields* had been the subject of a traffic stop, while in this case Casson was parked when the officers approached. In *Fields*, the defendant was asked to get out of his vehicle in conjunction with the comment a K-9 unit was being called to the scene while Casson was already out of his vehicle. Although factually different from *Fields*, this case still requires us to determine whether a reasonable person would have felt they were not free to leave had they been in Casson's position.

[¶10] Upon initially approaching Casson, the law enforcement officers made a clear statement to Casson that they were in contact with him because of increased drug activity in the area. A reasonable person would have believed law enforcement had initiated the contact for the purpose of an investigation. Additionally, the lack of a traffic stop would have likely reenforced the perception to any reasonable person they were the subject of an investigation. A reasonable person would not have been under the impression this was a welfare check or community caretaker encounter.

[¶11] Casson, after having a reasonable belief he was part of a law enforcement investigation, was then asked to consent to a search of his vehicle. When he refused to allow the search, he was told a K-9 unit would be called to conduct a "sniff" of the vehicle.

[¶12] The statement by law enforcement that a K-9 would be called is significant because it allows insight into what a reasonable person would have been thinking. If law enforcement truly intended to call a K-9 unit, they must have been fairly certain Casson felt he was not free to leave. If law enforcement didn't intend to call a K-9 unit, but instead intended to trick Casson into giving his consent to search the vehicle, law enforcement must have felt Casson would believe he was not free to leave. The trickery, while not impermissible, does provide support for the conclusion that a reasonable person would not have felt free to leave. Casson's immediate concession that calling a K-9 wouldn't be "necessary" is further indicia he felt he was required

3

to stay until the search occurred and the result was inevitable. Because Casson had already demonstrated he was willing and able to decline a voluntary request to search his vehicle, his immediate reversal consenting to a search upon the officer's statement that a dog would be called leads us to conclude that a reasonable person in his position would have believed he was not free to leave.

[¶13] The statement law enforcement officers were investigating drug activity, the request for identification, the lack of a traffic stop, the denied consent to search followed by the assertion a K-9 unit would be called, and Casson's response the K-9 would not be necessary, are sufficient for Casson to satisfy his burden to provide a prima facie evidence he had been seized.

[¶14] Having concluded Casson was seized, it becomes necessary to consider whether his seizure violated his right to be protected from unreasonable searches and seizures provided by the Fourth Amendment of the United States Constitution, and art. I, § 8 of the North Dakota Constitution. We have applied the "*Terry*" test to determine whether a seizure is justified, noting if there is reasonable and articulable suspicion that a person has committed or is about to commit a crime, the seizure is justified. *State v. Mercier*, 2016 ND 160, ¶ 8, 883 N.W.2d 478 (citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). We have articulated the *Terry* test as requiring a determination of whether the facts warranted the intrusion of the individual's Fourth Amendment rights, and if so, whether the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place. *Mercier*, at ¶ 9 (citing *State v. Sarhegyi*, 492 N.W.2d 284, 286 (N.D. 1992). "We use an objective standard: would a reasonable person in the officer's position be justified by some objective evidence in believing the defendant was, or was about to be, engaged in unlawful activity?" *State v. Boyd*, 2002 ND 203, ¶ 14, 654 N.W.2d 392.

[¶15] Our determination of whether an officer had a reasonable and articulable suspicion that a person has committed or is about to commit a crime is limited to the information known to the officer at the time of the stop. *State v. Robertsdahl*, 512 N.W.2d 427, 428 (N.D.1994). We have noted the justification for a stop under the

4

reasonable-and-articulable-suspicion standard requires the officer to possess "more than just a vague 'hunch' or other non-objective facts; and . . . the articulable facts must produce, by reasonable inference, a reasonable suspicion of unlawful conduct." *Bryl v. Backes,* 477 N.W.2d 809, 811, n. 2 (N.D.1991) (quoting *State v. VandeHoven*, 388 N.W.2d 857, 858, n. 1 (N.D.1986)). We have recently stated the following regarding our determination of whether the officer had reasonable and articulable suspicion to justify the stop:

> The determination of whether the facts in a case support a reasonable suspicion is a question of law which is fully reviewable on appeal. We affirm the district court's decision unless we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence.

*State v. Bornsen*, 2018 ND 256, ¶ 5, 920 N.W.2d 314 (internal citations omitted).

[¶16] At the suppression hearing, a narcotics task force officer testified that while he was off duty, he observed Casson traveling to a local park known for drug use and sales. Previous reports labeled Casson as part of the drug trade in the park, and law enforcement cameras set up in the area captured images of his truck in the area on numerous occasions. We conclude the State presented sufficient evidence during the hearing to conclude law enforcement had reasonable and articulable suspicion Casson was engaged in criminal activity or about to engage in criminal activity to justify the intrusion of Casson's Constitutional rights, and the scope of the intrusion was reasonably related to the circumstances which justified the interference.

[¶17] We agree with Casson that he was seized and his right to be free from unreasonable search and seizure implicated. However, we conclude the facts warranted the intrusion of Casson's Fourth Amendment rights, and scope of the intrusion was reasonably related to the circumstances which justified the intrusion.

The district court's denial of the motion to suppress was appropriate and we affirm the criminal judgment.

[¶18]   Jon J. Jensen
        Jerod E. Tufte
        Gerald W. VandeWalle, C.J.


**Crothers, Justice, specially concurring.**

[¶19]   The majority concludes Casson was seized for Fourth Amendment purposes when the deputies threatened to get a drug sniffing dog. I respectfully disagree.

[¶20]   In reviewing a district court's decision on a motion to suppress we defer to the district court's findings of fact, and we resolve conflicts in testimony in favor of affirmance because the district court is in a superior position to assess the witnesses' credibility and weigh evidence. *State v. Schmidt*, 2015 ND 134, ¶ 5, 864 N.W.2d 265. "A district court's findings of fact on a motion to suppress will not be reversed if there is sufficient competent evidence fairly capable of supporting the court's findings, and the decision is not contrary to the manifest weight of the evidence." *Id.* (quoting *State v. DeCoteau*, 1999 ND 77, ¶ 6, 592 N.W.2d 579). Questions of law are fully reviewable, and whether a finding of fact meets a legal standard is a question of law. *Id.*

[¶21]   Here, the district court agreed with the State's argument that this was a casual encounter, and that the deputies did not use lights, sirens or other indicia of law enforcement control. The district court also found Casson was not seized when law enforcement merely stated a K-9 would be called to complete a vehicle perimeter sniff.

[¶22]   The Fourth Amendment of the United States Constitution and art. I, § 8 of the North Dakota Constitution protects individuals from unreasonable searches and seizures. Not all encounters between law enforcement and citizens are seizures implicating the Fourth Amendment. *Garcia v. Levi*, 2016 ND 174, ¶ 11, 883 N.W.2d 901. An officer approaching and speaking with a citizen is not a Fourth Amendment seizure. *Id.* A Fourth Amendment seizure occurs if a reasonable person

6

would believe, viewing all the circumstances surrounding the incident, that he or she is not free to leave. *State v. Fields*, 2003 ND 81, ¶ 11, 662 N.W.2d 242. An officer's approach of a parked vehicle is not a seizure if the officer inquires of the occupant conversationally, does not order the person to do something, and does not demand a response. *Garcia,* at ¶ 11.

[¶23] Based on this record and the district court's findings, I agree with the district court that a Fourth Amendment seizure did not occur when law enforcement made contact with Casson. The deputies did not engage in a show of force when they located Casson in the park. Casson exited the truck on his own and met a deputy at the back of the vehicle. The deputy asked if Casson was carrying identification but did not demand to see it. The deputy asked for permission to search Casson's truck. Casson clearly felt free to refuse the search request and said no. When the deputy indicated a K-9 would be called, he did not direct Casson to wait outside of or stay away from his truck. Importantly, upon mention of a K-9 sniff, Casson immediately consented to a search.

[¶24] I do not agree with the majority that law enforcement's mere mention of obtaining additional resources objectively constitutes a Fourth Amendment seizure. *See* majority opinion, ¶ 12. If that was the case, law enforcement seemingly would escalate every casual encounter into a seizure by doing nothing more than calling for a backup officer. Under the majority's logic, a backup officer would serve no purpose if the driver is free to leave, and the driver and car could be gone when backup arrives. Yet I doubt many would conclude an officer's singular act of calling for backup transforms a non-custodial encounter into a seizure. We also know without extensive citation to authority that officers often ask to search a vehicle, sometimes without sufficient legal suspicion or cause to do so. *See, e.g.*, *State v. Schneider*, 855 N.W.2d 399, ¶ 3, 2014 ND 198 (deputy sheriff approached parked car and asked to search). If a driver in such a case refuses to permit the search, and the officer bluffs by stating in response that a warrant could be obtained, I seriously doubt many courts would conclude a seizure occurred simply because the officer made a statement about

7

getting (or even threatened to get) a warrant. So too here, I do not agree that an officer merely stating he was going to call for a K-9 transformed this non-custodial encounter into a Fourth Amendment seizure.

[¶25] Because a seizure under the Fourth Amendment did not occur, I would not address whether the facts support reasonable articulable suspicion to detain Casson. Rather, I would affirm the district court based on the lack of a Fourth Amendment seizure.

[¶26] Daniel J. Crothers
Lisa Fair McEvers